THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GLENN GILL, Defendant-Appellant.

First District (1st Division)    No. 1—89—1637

Opinion filed December 31, 1992.—Modified on denial of rehearing June 30, 1994.

Randolph N. Stone, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Noreen M. Daly, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

A jury convicted defendant, Glenn Gill, of first degree murder and armed violence predicated on first degree murder for the stabbing death of John Melvin Cooper (hereafter the deceased). The trial court sentenced defendant on both convictions to concurrent terms of 25 years' imprisonment.

On appeal defendant raises the following contentions:

(1) he was deprived of due process safeguards because the initial indictment process was flawed;

(2) his purported confession was not corroborated by other evidence;

(3) his testimony stating the stabbing was accidental was not improbable, uncorroborated or contradicted;

(4) the prosecutor misstated evidence during closing argument;

(5) the defense counsel's misunderstanding of the law regarding self-defense and accident and failure to submit an instruction regarding prior inconsistent statements made by a key prosecution witness denied defendant effective assistance of counsel;

(6) the Illinois first degree murder and second degree murder statutes violate due process;

(7) the Illinois Pattern Jury Instructions used at trial where the jury was instructed on both first degree murder and second degree murder violated his due process rights;

(8) his conviction for armed violence predicated on first degree murder must be vacated since it is based upon the same physical act as the conviction for first degree murder; and

(9) the trial court abused its discretion in sentencing defendant.

For the reasons set forth below, we affirm the convictions and vacate the sentence for armed violence. The evidence adduced at trial was as follows. The deceased's sister, Ms. Cooper, testified as a life and death witness. She stated that on July 3, 1988, she was living with her mother and the deceased in Markham, approximately five

houses from Ms. Estelle Smith's home. On that day, the defendant and his ex-wife, Alice Harris, came to her home to see the deceased. Ms. Cooper testified that she knew the defendant was a boarder at Ms. Smith's home. The deceased did not leave home when the visitors stopped over; however, he left his home at approximately 1:30 to 2 that afternoon. The next time Ms. Cooper saw the deceased, he was lying in the grass near the driveway of Ms. Smith's home. She accompanied the deceased to the hospital where he subsequently died.

Essie Smiley, a neighbor who lived two houses away from Ms. Smith's house, testified that he could see right into her backyard and had a view of the yard and the barbecue grill. On the day in question, Mr. Smiley had been barbecuing in his own backyard. During the day, he observed the defendant, another man and two women in the Smith backyard. He later saw the defendant running up the embankment behind the houses and observed that defendant had a butcher knife in his hand which he threw across 167th Street. Mr. Smiley never saw or heard anyone arguing in Ms. Smith's backyard; however, he heard the defendant yell, "B----, pick me up" as he ran a couple of feet up the embankment. Mr. Smiley also helped one of the investigating police officers find the butcher knife which was "sticking in the ground." He identified a photograph of the knife and the knife itself in open court.

Several police officers testified. Officer Quinlan testified that he arrived at the scene and observed the victim lying in the grass area between the houses, bleeding from the left side of his back. He spoke to Alice Harris and Estelle Smith. Officer Quinlan also investigated the yard area, and his testimony of where the grill was located was consistent with that of Mr. Smiley. Detective Barron testified that he was assigned to investigate the incident and later that evening he received a call from the Chicago police department informing him that the defendant had turned himself in to the police. He brought the defendant back to the Markham Police Department, where early on the morning of July 4 the assistant State's Attorney interviewed the defendant in Detective Barron's presence and obtained a statement from him.

After defendant signed the *Miranda* waiver form and agreed to make an oral statement, Assistant State's Attorney Donnelly conducted an interview of the defendant. Donnelly then had the oral statement reduced to writing. He read the statement to defendant, who in turn read and signed the statement and initialled the changes. With regard to the stabbing, the written statement related only that: "He (the deceased) slapped me in the head once and grabbed me. I

(defendant) had a knife in my hand and stabbed him in the back. This happened by the garage, in the rear of the house."

Donnelly also testified to certain details about the stabbing which allegedly were told to him by the defendant, but were not included in the written statement. Donnelly stated that he recalled the defendant also saying "that Cooper (the deceased) had grabbed him, grabbed the defendant in this type of fashion, meaning grabbing both shoulders, with both hands, in this type of fashion, and then Gill, in response to that, and taken his left hand, after being grabbed on both shoulders, had taken his left hand and pushed Cooper aside in this fashion, to his left side, and then as Cooper had went by his body after he pushed him in this fashion, he had the knife in his right hand and then took the knife and put it into Cooper's back, in that fashion." According to Donnelly, defendant told him that when he pushed Cooper aside to the left, he stabbed Cooper as he "went by his body." Donnelly stated that defendant never mentioned the victim grabbing him around the legs or picking him up from the ground. On cross-examination, Donnelly acknowledged that he did not include in the written statement everything the defendant told him. Following testimony by the medical examiner, the State rested.

Defendant testified in his own behalf. He stated that he engaged in an ongoing argument with the deceased during the day. Defendant also stated that the deceased knocked him down by hitting him with his fists. The deceased picked up a brick and threatened to hit defendant until Ms. Smith told the deceased to put down the brick. The deceased then struck him in the head with one hand and bent down and picked up defendant.

Defendant denied telling the assistant State's Attorney that the deceased grabbed him with both hands in the manner testified to by Donnelly. However, defendant recalled telling Donnelly that the deceased picked him up around the legs. He also testified that he could not read well, only having completed the eighth grade.

Alice Harris testified that when defendant and the deceased were arguing, the discussion became loud. She saw the deceased with a brick, which Ms. Smith told him to put down. After the brick incident, Ms. Harris went back into the garage; she did not see any stabbing, tussling, wrestling or fighting.

In rebuttal, the State presented the testimony of an assistant State's Attorney and two police officers. One officer testified that she heard Ms. Harris' responses to the investigating officer given immediately after the incident. Ms. Harris allegedly told the officer that she saw defendant with a butcher knife, that she saw the deceased with a wooden chair, that she observed the two men arguing and that she also saw defendant stab the deceased in the back.

Officer Quinlan also testified that when she was first questioned, Ms. Harris admitted hearing an argument between defendant and the deceased. Ms. Harris also stated at that time that defendant had a knife in his hand when he exited the yard. The defendant instructed Ms. Harris to "get the car" and "pick him up" as he ran up the hill.

The assistant State's Attorney repeated that defendant never mentioned during questioning that the deceased picked him up or flipped defendant over his back. After closing argument and instructions to the jury, defendant was convicted of first degree murder and armed violence.

■ Defendant first contends in his supplemental brief that the indictment process was flawed and his due process rights were violated because he was not charged with the lesser crime of manslaughter. He argues that a verbatim reading of his statement to the assistant State's Attorney, which according to his interpretation clearly describes an accidental act of an involuntary nature, should have precluded the grand jury from charging him with the offense of first degree murder.

The defendant has argued that his constitutional rights were violated at the indictment stage because the State did not indict for a charge less than first degree murder and, related thereto, the evidence did not support an indictment for first degree murder. As such, the defendant argues that the State improperly manipulated the grand jury to return an indictment for first degree murder. It is the State's position that defendant's argument is totally without merit in that it is within the State's sole discretion to determine the charges to be brought against a defendant. Furthermore, the defendant cannot properly challenge the sufficiency of the evidence at the indictment stage.

The law in Illinois is clear that it is within the discretion of the State to determine what charges are to be brought when an offense has been committed. (*People v. Travis* (1981), 94 Ill. App. 3d 983, 419 N.E.2d 433; *United States ex rel. Fitzgerald v. Jordan* (7th Cir. 1984), 747 F.2d 1118, 1120; Ill. Rev. Stat. 1985, ch. 38, par. 112—4.) A defendant cannot properly raise the argument that he should have been charged differently. In addition, as it relates to the facts in the instant case, defendant's argument that the State should have sought an indictment for a lesser included charge instead of first degree murder is of no merit since an indictment for a particular offense serves as an indictment for all lesser included offenses even if they are not specifically spelled out. (*People v. Vasquez* (1981), 97 Ill. App. 3d 1142, 424 N.E.2d 42; *People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5.) Thus, the State's indictment for first degree murder effectively

indicted defendant for the lesser included offenses of voluntary and involuntary manslaughter.

Furthermore, it is not incumbent on the State to present every piece of incriminating evidence in its possession nor is the State required to present all exculpatory evidence of which it is aware. (*People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793; *People v. Bragg* (1984), 126 Ill. App. 3d 826, 467 N.E.2d 1004.) A case closely on point is the case of *People v. Linzy* (1979), 78 Ill. 2d 106, 398 N.E.2d 1, wherein the defendant claimed that the prosecutor was guilty of misconduct in informing the grand jury that the facts did not warrant a finding of sufficient provocation to reduce the offense to voluntary manslaughter. The supreme court rejected that argument and found that it was within the prerogative of the prosecutor to advise the grand jury on the law applicable to the facts. (*Linzy*, 78 Ill. 2d 106, 398 N.E.2d 1.) The court therein also stated that if sufficient evidence is presented at defendant's trial to support a voluntary manslaughter instruction, defendant is entitled to such an instruction. *Linzy*, 78 Ill. 2d 106, 398 N.E.2d 1.

Finally, it has been repeatedly held that a defendant cannot properly challenge the sufficiency of the evidence presented to the grand jury. (*Creque*, 72 Ill. 2d 515, 382 N.E.2d 793; *People v. Johnson* (1981), 97 Ill. App. 3d 1055, 1064, 423 N.E.2d 1206, 1212.) This is because the indictment proceeding is not a trial, nor even a mini trial. The defendant's guilt is determined at trial not at the grand jury proceeding. Thus, defendant's argument in this respect is completely without merit. Defendant has not sustained his burden of showing irregularities in the grand jury proceedings. *People v. Haag* (1979), 80 Ill. App. 3d 135, 399 N.E.2d 284.

We next consider defendant's contention that he was not proven guilty of first degree murder beyond a reasonable doubt. In support of this contention, defendant argues that his purported confession was not corroborated by other evidence and that his testimony stating the stabbing was an accident was not improbable, uncorroborated or contradicted.

When considering a challenge to the sufficiency of the evidence, the reviewing court must determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. The United States Supreme Court in *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89, stated:

> "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.)

See also *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ After reviewing all of the evidence in the record below in the light most favorable to the prosecution, we find that there is sufficient evidence to support the jury's verdict. The jury was presented with the testimony of one State witness who saw the defendant visiting the deceased hours before the stabbing. Another State witness, Mr. Smiley, who had an opportunity to observe the activity in the yard where the stabbing occurred, testified that he never heard an argument or saw any fighting between the defendant and the deceased. However, Mr. Smiley saw the defendant run from the scene with a butcher knife that he immediately threw away. He was able to help locate the knife and identified it at trial as the knife defendant discarded. There was evidence presented by the medical examiner that the deceased died of a stab wound. An officer who testified for the prosecution revealed that the defendant told him he had stabbed the deceased in the back. The testimony about scuffling and wrestling between the defendant and the deceased immediately prior to the stabbing came from the defendant's version of what occurred. There was also testimony by a State witness that the defendant had stated during his interview that the deceased grabbed him. Yet, defendant's own witness, his ex-wife, Ms. Harris, stated that she heard the men arguing earlier; however, she never observed any wrestling or fighting. Her testimony about not seeing the stabbing, however, was contradicted during the State's rebuttal. Unlike defendant's argument on appeal, we see no great disparity between the contents of his statement given to the assistant State's Attorney, Donnelly's trial testimony about what defendant told him which was not included in the statement, and the defendant's trial testimony. Inconsistencies between witnesses' testimony as well as within one witness' testimony do not of themselves create a reasonable doubt of guilt, where the inconsistencies amount to only minor discrepancies. See *People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339; *People v. Porter* (1981), 96 Ill. App. 3d 976, 422 N.E.2d 213; and *People v. Bryant* (1980), 85 Ill. App. 3d 836, 407 N.E.2d 597.

Moreover, we reject defendant's contention that his confession was not corroborated by other evidence. The jury was in the best position to view the witnesses and the evidence and determine based thereupon whether the stabbing was accidental or not. A review of the record reveals that other testimony provided sufficient independent evidence to corroborate the facts of defendant's inculpatory statement. (*People v. Smith* (1988), 172 Ill. App. 3d 94, 526 N.E.2d 849.) All the law requires to corroborate defendant's admission is extrinsic evidence corroborating the admission as a whole which,

taken together with the admission, is sufficient to support a finding of guilt beyond a reasonable doubt. In the present case, defendant's confession was corroborated by the testimony of other witnesses. As stated above, a neighbor testified as to what he did and did not observe on that date and how he saw defendant run from the scene with a knife in hand which the defendant disposed of by throwing it across the street. Several police officers contradicted Ms. Harris' trial testimony that she never said she saw the stabbing or observed defendant with a knife. Defendant fled from the scene following the stabbing. He was seen with the murder weapon and also seen disposing of it. The decision of whether to accept the incident as an accident, an act of self-defense, or an intentional killing was left to the trier of fact. Whether a homicide is murder or manslaughter or whether it is justified as self-defense is a question to be determined by the trier of fact. (*People v. Greene* (1987), 160 Ill. App. 3d 1089, 513 N.E.2d 1092.) Moreover, the jury's role is to assess the credibility of and weight to be given each witness, and here the jury was aware of all the inconsistencies and possible motivations for testifying. (See *People v. Carter* (1988), 168 Ill. App. 3d 237, 245, 522 N.E.2d 653.) As the jury heard the evidence, made its deliberations, and found defendant guilty, we cannot usurp its function. A guilty verdict cannot be overturned unless the proof is so improbable, unsatisfactory, or unconvincing as to raise a reasonable doubt of defendant's guilt. (*People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001; and *People v. Szudy* (1982), 108 Ill. App. 3d 599, 439 N.E.2d 137.) Accordingly, we decline to reverse defendant's conviction on this basis.

■ Defendant next urges that he was denied a fair trial because the prosecutor committed reversible error when he misstated evidence during closing argument. He claims the prosecutor misstated evidence about the nature of the stab wound and the facts in defendant's confession. Prosecutors are given wide latitude in closing argument, and improper comments will not merit reversal unless they result in substantial prejudice to the defendant. (*People v. Pittman* (1982), 93 Ill. 2d 169, 176, 442 N.E.2d 836.) The trial court's determination as to the propriety of closing argument will not be reversed absent a clear abuse of discretion. (*People v. Harris* (1990), 196 Ill. App. 3d 663, 675, 554 N.E.2d 367.) Although it is improper for the State to make arguments when not based upon evidence produced at trial, in this case, based upon a review of the entire record, we conclude these arguments do not rise to the level of prejudicial error. Moreover, any error here was harmless in light of the court's subsequent instruction that closing argument is not evidence and any argument not based on the evidence should be disregarded. (See

*People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288.) A prompt sustained objection and admonishment to the jury are sufficient to cure any prejudice. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

Defendant also raises an ineffective assistance of counsel claim. He urges that defense counsel did not adequately represent him because counsel failed to submit an instruction regarding the prior inconsistent statements made by a prosecution witness and because counsel did not understand the law regarding self-defense and accident. Claims of ineffective assistance of counsel are analyzed in accordance with rules set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. *Strickland* established a two-pronged test to which all claims that defendant was denied the assistance of counsel are subjected. First, defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel's conduct fell below an objective standard of reasonableness. Second, defendant must show that the deficient performance prejudiced the defense, or that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■ With respect to the allegation that trial counsel failed to submit an instruction regarding prior inconsistent statements, defendant cites to the pretrial written statement he gave to the assistant State's Attorney and the latter's trial testimony which expounded upon the conversation leading up to that statement. It has been held that a defense counsel's failure to submit an instruction to the jury does not create a presumption of ineffective assistance of counsel. (See *People v. Stewart* (1984), 104 Ill. 2d 463, 473 N.E.2d 122.) Initially, we note that we do not find the assistant State's Attorney's trial testimony to be inconsistent with defendant's pretrial written statement. The assistant State's Attorney testified at trial that the written statement was a summary or recap of the information obtained from the defendant. Although he gave an expanded version of what defendant told him during the custodial interview, the assistant State's Attorney was available for cross-examination on this matter during the trial by defense counsel. Further, there could have been legitimate reasons for counsel's not using prior inconsistent statements, if any, of the witness. (See *People v. Jimerson* (1989), 127 Ill. 2d 12, 34, 535 N.E.2d 889.) Even if counsel failed to adequately cross-examine the assistant State's Attorney or proffer a specific instruction, we are unable to conclude that based upon this record

defendant was prejudiced as a result. Moreover, the record shows that the trial court submitted to the jury an agreed-upon instruction that a prior inconsistent statement of a witness goes to the weight to be given courtroom testimony.

We now turn to defendant's next contention that trial counsel's misunderstanding of the law and his failure to submit an instruction to the jury on self-defense constitutes ineffective assistance of counsel. We first point out that parties are usually responsible for preparing jury instructions, and a party generally may not raise on appeal the failure to give an instruction unless he tendered it to the trial court. (See *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141.) Although we find no constitutional rights involved here nor cause for examination under the plain error doctrine (*People v. Young* (1989), 128 Ill. 2d 1, 57-58, 538 N.E.2d 453), we will review defendant's contention in light of the argument that he received ineffective assistance of counsel when trial counsel failed to argue or tender instructions or either self-defense or accident.

The questions of whether to advance a particular theory at trial or whether to proffer an instruction on self defense and/or accident are traditionally considered to be matters of trial strategy, an area left to trial counsel's discretionary judgment. The courts will not indulge a hindsight analysis to determine whether the attorney's decision was reasonably adequate under the circumstances. (*People v. Bryant* (1989), 128 Ill. 2d 448, 458, 539 N.E.2d 1221.) To prevail on a claim that his trial counsel was ineffective for advancing a particular theory or for failing to submit particular instructions to the jury, the defendant must show that the instructions would have been given and that the trial outcome would have been different. In doing so the reviewing court evaluates the reasonableness of counsel's conduct from counsel's perspective in light of the totality of the circumstances. See *People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.

In the present case, trial counsel's strategy was to establish the stabbing as a justifiable homicide. In the opening statement, defense counsel stated that the evidence would show that defendant acted "perhaps in self-defense," and that defendant "was resisting the attack of the deceased." Self-defense is an affirmative defense which a defendant may raise only if he presents some evidence of each element of the defense (*People v. Kyles* (1980), 91 Ill. App. 3d 1019, 415 N.E.2d 499), or if the People's evidence raises it. Ill. Rev. Stat. 1989, ch. 38, par. 3—2(a).

Such a defense is raised when (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; and (4) the person threatened must actually

believe that a danger exists, the use of force is necessary to avert the danger and the force he uses is necessary. The use of deadly force is limited to those situations in which the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. (*People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749.) The resolution of the issue of self-defense is for the trier of fact, and the trier of fact need not accept as true the evidence in favor of self-defense. (*People v. Johnson* (1988), 172 Ill. App. 3d 371, 377, 526 N.E.2d 611.) The trier of fact must consider the probability or improbability of the evidence and the circumstances surrounding the crime.

■ In the present case, resolution of defendant's guilt depended upon the credibility of the witnesses and the weight accorded to their testimony. The State witnesses testified that they did not observe any fighting between the men immediately prior to the incident. Defendant's witness testified that the deceased picked up a brick earlier in the day, purportedly to hit the defendant. Defendant's version of how the stabbing occurred, in our view, could have led the jury to conclude that his testimony defied belief. Defendant's testimony was unclear as to whether or not he saw or heard someone approaching him from behind. However, he stated that he was not facing the deceased when he was struck in the head. He also stated that the deceased "knocked him back," "picked him up right at the knees" and he "came over his shoulder." Neither man fell, yet defendant "blacked out and saw stars." The incident occurred near or in a garage close to at least two other persons, but no one heard any noise. Defendant also stated that while over the deceased's shoulder with the butcher knife in hand, "that's how it appeared to have [*sic*] went into his back." Based upon defendant's testimony and the other evidence presented at trial, there was no basis for an instruction on accident. Generally, counsel's decision to argue one theory of defense to the exclusion of another is considered trial strategy. (*People v. Mikell* (1991), 217 Ill. App. 3d 814, 821, 577 N.E.2d 1300.) Moreover, where counsel believes a tactic or defense is meritless, he may strategically refrain from seeking an instruction. *People v. King* (1991), 218 Ill. App. 3d 248, 253 N.E.2d 217.

Further, the record shows that the trial court submitted a jury instruction on first degree murder and the lesser-included offense of second degree murder. Thus, the jury was given the opportunity to convict defendant of second degree murder based upon justification if it accepted his testimony that he and the deceased were involved in an ongoing dispute and he was protecting himself. A jury is not obligated to accept defendant's testimony as to self-defense; rather, in

weighing evidence in a murder prosecution, the jury must consider his testimony, the circumstances surrounding the murder and the testimony of the other witnesses. Accordingly, in applying the foregoing principles to the instant facts, we cannot say that trial counsel misunderstood the law, nor can we conclude that the tactical decision not to give instructions other than those given constituted ineffective assistance.

Based upon the foregoing, we conclude that counsel's decisions at trial afforded defendant a fair trial and defense. A defendant is not entitled to a perfect trial, but to a fair one. *People v. Szabo* (1991), 144 Ill. 2d 525, 531, 582 N.E.2d 173.

■ Defendant next contends that the Illinois first degree and second degree murder statutes violate due process. A plethora of recent decisions by this court have specifically addressed and rejected constitutional challenges to the Illinois murder statutes as raised by the defendant here. (See *People v. Guidry* (1991), 220 Ill. App. 3d 406, 581 N.E.2d 38; *People v. Brown* (1991), 218 Ill. App. 3d 890, 578 N.E.2d 1168; and *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090.) As defendant has failed to present any new arguments which would require our reconsideration of prior rulings by this court, we render our decision here in accordance with the reasons set forth in the above mentioned decisions. Accordingly, we conclude that sections 9—1 and 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 9—2) do not violate the due process clause of the fourteenth amendment to the United States Constitution.

■ Defendant further maintains that he was denied due process of law where the jury was given Illinois Pattern Jury Instructions (IPI) at trial about first degree and second degree murder. In the present case, the jury was given IPI instructions on the offenses of first degree murder and second degree murder. Based upon our review of the instructions given, we hold that the trial judge's actions in tendering them was not improper. The instructions accurately stated the law and clearly delineated the alternatives available to the jury. Neither did the instructions emphasize first degree murder more than the lesser offense or acquittal.

Defendant asks this court to vacate his conviction for armed violence predicated on first degree murder because the armed violence conviction is based upon the same physical act as the conviction for murder. It is well settled that an accused cannot be convicted and sentenced for multiple crimes based upon the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) In determining whether defendant's conduct constituted a single physical act, the court must take into account the prosecutorial intent as

reflected in the indictment; the existence of an intervening act; the time interval between successive parts of the defendant's conduct; the victim's identity; the similarity of the acts; and the location of the acts. *People v. Guzman* (1990), 208 Ill. App. 3d 525, 535, 567 N.E.2d 500.

■ In the present case, the evidence established that defendant stabbed the deceased in the back once with a large knife. There was only one act, a single stab wound to the deceased's back. Moreover, the language of the indictment treats the stabbing as one physical act. (See *People v. Massey* (1991), 219 Ill. App. 3d 909, 912, 579 N.E.2d 1259.) Similarly, we here conclude that defendant's convictions for armed violence and murder were predicated on a single physical act. Therefore, the sentence on the armed violence conviction was improper and must be vacated. Also, in reliance on *Massey* (219 Ill. App. 3d at 915), we decline to remand this matter for resentencing "in the absence of any indication that the court improperly considered the vacated convictions." Defendant's 25-year sentence for murder is thus affirmed and his concurrent 25-year sentence for armed violence predicated on first degree murder is vacated.

Last, defendant contends the trial court abused its discretion in sentencing him to concurrent terms of 25 years' imprisonment on the convictions. Because we have vacated the armed violence sentence, we need not address this issue.

For the foregoing reasons, we affirm defendant's conviction and sentence for first degree murder and vacate the sentence for armed violence.

Affirmed in part; vacated in part.

CAMPBELL and O'CONNOR, JJ., concur.