**UNITED STATES of America ex rel. Glen GILL, Petitioner,**

v.

**Richard B. GRAMLEY, Respondent.**

No. 97 C 3048.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 5, 1998.

---

Glenn Gill, Galesburg, IL, pro se.

Robert K. Villa, Illinois Attorney General's Office, Chicago, IL, Chief of Criminal Appeals, Illinois Attorney General's Office, Criminal Appeals Div., Chicago, IL, for Richard B. Gramley, Warden, Hill CC.

Chief of Criminal Appeals, Illinois Attorney General's Office, Criminal Appeals Div., Chicago, IL, for Jim Ryan.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Petitioner Glenn Gill petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Gill was convicted of first degree murder. In his pro se petition, Gill raises nine issues that he claims entitle him to relief from that judgment: 1) there was insufficient evidence of first degree murder because his confession was not corroborated by other evidence and his trial testimony stating that the stabbing of the decedent was an accident was not improbable, uncorroborated, or contradicted; 2) prosecutorial misconduct during closing argument denied him a fair trial; 3) his trial counsel was constitutionally ineffective where counsel failed to a) understand the law of self-defense and accident, b) to perceive the existence of prior inconsistent statements as substantive evidence, c) to submit a jury instruction on the use of prior inconsistent statements as substantive evidence, and d) to advance a defense of voluntary intoxication and present evidence of involuntary manslaughter; 4) the Illinois first and second degree murder statutes and corresponding jury instructions violate both federal and state due process principles; 5) the trial court abused its discretion during sentencing by relying on improper factors; 6) denial of due process where the initial indictment was flawed; 7) appellate counsel's representation was constitutionally insufficient where counsel a) failed to raise an ineffective assistance of trial counsel claim; and b) failed to raise the defense of involuntary intoxication and present evidence of involuntary manslaughter under the "plain error rule"; 8) post-conviction appellate counsel was ineffective for failing to properly comply with the requirements of *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); and 9) the Illinois Appellate Court's denial of Gill's late petition for rehearing

denied him due process of law. For the reasons set forth below, Gill's petition for a Writ of Habeas Corpus is denied.

## FACTS[1]

As the Illinois appellate court has fully set forth the underlying facts, we will only summarize them here. *People v. Gill*, 264 Ill. App.3d 451, 202 Ill.Dec. 294, 637 N.E.2d 1030 (1992). Gill and his former wife, Alice Harris, attended a barbeque at the home of Ms. Gabrielle Cooper. Ms. Cooper's brother, Melvin Cooper, and neighbor Mrs. Smith were also present at the barbeque. According to defendant's trial testimony, Gill and Melvin spent the afternoon engaged in an ongoing argument. At one point, Melvin picked up a brick in a threatening manner before Harris and Smith convinced him to put it down. Gill claims that shortly thereafter, Melvin struck him from behind. Gill "blacked out" and "saw stars." Melvin allegedly bent down to pick up Gill, who was still holding a large barbeque knife. Gill claims that he accidentally stabbed Melvin in the back during the scuffle. Gill fled the scene after throwing the knife across a busy street. Gill learned of Melvin's death a few hours later and turned himself in to the police.

The State introduced the following evidence at Gill's trial. Essie Smiley, a neighbor with a view of the yard and barbeque, testified that he observed Gill running up the embankment behind his home. Smiley noted that Gill had a butcher's knife in his hand and that he watched Gill throw the knife across 167th Street while yelling for Alice Harris to pick him up. Smiley helped officers recover the knife. Although Smiley had an opportunity to observe the activity in Ms. Cooper's yard, he did not hear an argument or see Gill and the decedent fighting.

The medical examiner ("M.E.") testified that Melvin died of a stab wound. His examination revealed that the knife penetrated the left chest cavity from back to front, approximately 6 inches. The knife pierced Melvin perpendicularly to the plane of the back, that is, parallel to the ground. The M.E. concluded that Melvin's blood alcohol level was twice the legal limit for driving under the influence.

Officer Quinlan testified that he found the victim bleeding from the left side of his back. Quinlan interviewed Harris and Smith at the scene. The prosecution then called Detective Barron, who testified that Gill turned himself in to the police hours after stabbing Melvin and gave an oral statement to ASA Christopher Donnelly. Donnelly reduced the statement to writing and read the statement to Gill, who read and signed the statement and initialed the changes. The written statement related that "We were having a barbeque and I was cooking. Melvin and I got into a fight. He was walking away from me, turned and came at me. He slapped me in the head once and grabbed me [and] pick up [sic]. I had a knife in my hand and stabbed him in the back. This happened by the garage in the rear of the house."

ASA Donnelly also testified at trial, offering an expanded version of Gill's written statement. According to Donnelly, Gill had explained to him "that [Melvin] had grabbed him, grabbed the defendant in this type of fashion, meaning grabbing both shoulders, with both hands, in this type of fashion, and then Gill, in response to that, had taken his left hand, after being grabbed on both shoulders, had taken his left hand and pushed Cooper aside in this fashion, to his left side, and then as Cooper had went by his body after he pushed him in this fashion, he had the knife in his right hand and then took the knife and put it into Cooper's back, in that fashion." According to Donnelly, Gill claimed that when he pushed Melvin aside, he stabbed Melvin as "he had went by his body."

1. Unless otherwise indicated, the following facts are gleaned from the Illinois Appellate Court opinion reported at, *People v. Gill*, 264 Ill.App.3d 451, 202 Ill.Dec. 294, 637 N.E.2d 1030 (1992). *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Hockett v. Duckworth*, 999 F.2d 1160, 1165 (7th Cir.1993) ("Under 28 U.S.C. § 2254(d), we presume that state court findings of fact are correct if the findings are made after a hearing on the merits, and are fairly supported by the record."). Gill insists that we should not presume the appellate court's factual findings to be correct. However, Gill's recitation of the facts does not significantly differ from that presented by the appellate court.

Gill testified on his own behalf, offering a less culpable explanation of the incident. According to Gill, he was at the barbeque pit turning meat and cutting ribs. With the butcher's knife still in his hands, he walked from the pit toward the garage. Suddenly Gill heard footsteps and as he started to turn around he was "struck upside the head," and blacked out. Gill realized that Melvin had struck him and was bending down to lift Gill by the knees. Gill recalled that:

> When he picked me up at my knees, my knees went bent, when he pick [sic] me up he was going all the way up with me just straight up, that is when I come [sic] over his shoulder and I was headed head down and I still had the butcher knife inside my hand, that's how it appeared to have went [sic] into his back.

Gill denied telling Donnelly that he was grabbed in the manner described by Donnelly. Perhaps in an attempt to explain why he signed the statement, Gill informed the jury that he had difficulty reading and writing at the time he made the confession.

The defense also offered the testimony of Alice Harris. Harris testified that Gill and Melvin were arguing loudly on the afternoon of Mrs. Cooper's barbeque and that she saw Melvin wielding a brick. After the brick incident, Harris explained that she went back into the garage and, therefore, did not see any fighting or the stabbing. In rebuttal, police officers testified that Harris told investigators at the scene that she had observed the two men fighting—Melvin armed with a brick, Gill with a chair—and witnessed the stabbing. The officers further testified that Harris informed them that she saw Melvin leave the yard with the knife in his hand, yelling for Harris to get the car.

The trial court issued both first and second degree murder instructions. The jury found Gill guilty of first degree murder and armed violence. The trial court sentenced Gill on both convictions to concurrent terms of twenty-five years imprisonment.

Gill appealed, arguing that 1) he was deprived of due process because the initial indictment process was flawed; 2) his purported confession was not corroborated by other evidence; 3) his testimony stating the stabbing was accidental was not improbable, uncorroborated, nor contradicted; 4) the prosecutor misstated evidence during closing argument; 5) defense counsel's representation was constitutionally insufficient, as he misunderstood the law regarding self-defense and accident and failed to submit an instruction regarding prior inconsistent statements made by Donnelly; 6) the Illinois first degree and second degree murder statutes violate due process; 7) the Illinois pattern instructions used at trial where the jury was instructed on both first and second degree murder violated his due process rights; 8) his conviction for armed violence predicated on first degree murder must be vacated since it is based upon the same physical act as the conviction for first degree murder; and 9) the trial court abused its discretion in sentencing the defendant. The Illinois appellate court rejected all of Gill's contentions, with the exception of argument 8. Finding that the armed violence charge was based upon the same physical act as the first degree murder charge, the court vacated Gill's armed violence conviction. *People v. Gill,* 264 Ill.App.3d 451, 464, 202 Ill.Dec. 294, 637 N.E.2d 1030, 1039 (1992).

The Illinois Supreme Court denied Gill's petition for leave to appeal ("PLA") without opinion on April 5, 1995. *People v. Gill,* 161 Ill.2d 532, 208 Ill.Dec. 364, 649 N.E.2d 420 (Ill.1995). After the trial court summarily denied Gill's post-conviction petition, Gill appealed. The appellate court affirmed and, once again, the Illinois Supreme Court denied Gill's PLA.

## ANALYSIS

■■■ Gill's filed this habeas petition on June 24, 1997, and is therefore governed by the recent amendments to 28 U.S.C. § 2254. Section 2254(d)(1) provides that habeas relief may be awarded only where the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" as determined by the United States Supreme Court. *Lindh v. Murphy,* 96 F.3d 856, 868–70 (7th Cir.1996). The "contrary to" provision refers to ques-

tions of law; that is, a federal court can review, de novo, whether a state court has deviated from the Constitution on legal questions *Id.* "Unreasonable application," however, refers to mixed questions of law and fact. *Id.* at 870. The "unreasonable application" exception "tells federal courts: Hands off, unless the [state court] judgement is based on an error grave enough to be called 'unreasonable'." *Id.*

Under § 2254(d)(2), habeas relief is only otherwise possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceeding. 28 U.S.C. § 2254(d)(2) (1996). Having set forth the applicable standards, we will address each of Gill's arguments in turn.

### 1. Sufficiency of the Evidence

■■■ Petitioner's first claim alleges that the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt because Gill testified that, while he did in fact stab Melvin, it was an accident. In addition, Gill argues, other than his confession, there was no other evidence introduced at trial establishing that a crime occurred. In support of his contention that reversal is therefore required, Gill cites to *People v. Willingham,* 89 Ill.2d 352, 59 Ill.Dec. 917, 432 N.E.2d 861, 864 (Ill.1982) and *People v. Smith,* 172 Ill.App.3d 94, 122 Ill.Dec. 456, 526 N.E.2d 849, 858 (1988). We will first determine whether Gill's confession was corroborated, and then determine whether this evidence was sufficient to support a conviction.

Turning to the cases cited by Gill, we note that *Willingham* and *Smith* merely hold that "there must be some evidence, apart from the confession, demonstrating that a crime occurred." *Smith,* 172 Ill.App.3d 94, 109, 122 Ill.Dec. 456, 526 N.E.2d 849, 858 (1988). In the instant case, witnesses testified that Gill was alone in the yard with the victim immediately before the stabbing, the two men were engaged in a on-going dispute and the decedent had threatened Gill, Gill fled the scene at the time of the stabbing while carrying the murder weapon, and that Gill attempted to dispose of the knife used in the stabbing. This evidence is consistent with Gill's confession and constitutes sufficient independent corroboration. *See Willingham,* 89 Ill.2d at 362, 59 Ill.Dec. 917, 432 N.E.2d at 866 (eye-witness placing defendant at the scene of the crime is sufficient corroboration).

■■■ Having determined that Gill's confession was sufficiently corroborated, we turn to his claim that this evidence was insufficient to convict him of first degree murder, as he testified that the stabbing was justified. Under *Jackson v. Com. of Virginia,* the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making this inquiry, we will not reweigh the evidence or reevaluate the credibility of the witnesses. *United States v. Mejia,* 909 F.2d 242, 245 (7th Cir.1990).

At trial, Gill testified to stabbing Melvin. The only question that remained for the jury to determine was whether the stabbing was justified. Gill offered only his own testimony that the stabbing occurred accidently while Melvin was attacking him in support of his version of the events. The appellate court concluded that the jury was aware of all the inconsistencies and Gill's possible motivation for testifying and refused to overturn its guilty verdict.

A review of the evidence reveals that the appellate court's rejection of Gill's claim was neither contrary to nor an unreasonable application of Supreme Court authority. While Gill's testimony, if believed, might lead one to the conclusion that the stabbing was justified, his confession does not. Both Gill and the State concede that the confession was incomplete, but the two part company when elaborating on Gill's oral statement to the police. The jury was free to credit ASA Donnelly's testimony concerning Gill's statement, which would further impinge Gill's credibility. This combined with Harris' questionable testimony, Smiley's statement that Gill fled the scene and attempted to hide evidence, and the nature of the wound are

sufficient to support Gill's conviction. Because we find that Gill cannot establish that this evidence is "contrary to the laws of nature" or is "so improbable on its face that no reasonable fact finder" could have convicted him, we find his claim is without merit. *United States v. Wilson,* 31 F.3d 510, 514 (7th Cir.1994) (quoting *United States v. Saunders,* 973 F.2d 1354, 1358 (7th Cir. 1992)).

## 2. Prosecutorial Misconduct.

■ Gill contends that the prosecutor's misstatement of the evidence during closing arguments deprived him of his right to a fair trial. Specifically, Gill points to the prosecutor's arguments summarizing ASA Donnelly's testimony and its relation to the stab wound. At closing, the prosecutor informed the jury that Gill stabbed Melvin in retaliation for having slapped him. In describing the incident, the prosecutor summarized ASA Donnelly's testimony, stating that Gill "swung [Melvin] around" and stabbed him in the back, that Gill "turned the victim around" and put the knife in a "horizontal position into the victim's back." The prosecutor indicated that Gill's version of the events was inconsistent with the stab wound, explaining that if Gill fell over Melvin's shoulder, the knife could not have entered Melvin's back perpendicularly, as described by the M.E.

Gill correctly notes, however, that ASA Donnelly never stated that Gill swung or turned Melvin around prior to stabbing him. Rather, Donnelly testified that when Gill pushed Melvin aside, he stabbed Melvin as "he had went by his body." Moreover, Gill argues, Donnelly's testimony regarding Gill's initial description of the events-absent the prosecutor's improper embellishment-is inconsistent with the stab wound. As such, Gill contends that the prosecution improperly bolstered Donnelly's testimony to reinforce its case against Gill, denying Gill a fair trial.

■ In order to succeed on his prosecutorial misconduct claim, Gill must prove both that the remarks were improper and that they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91

L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "To carry this burden, [Gill] must show that it is at least likely that the misconduct complained of affected the outcome of his trial—i.e., caused the jury to reach a verdict of guilty when otherwise it might have reached a verdict of not guilty." *Rodriguez v. Peters,* 63 F.3d 546, 558 (7th Cir.1995) *quoting United States ex rel. Shaw v. De Robertis,* 755 F.2d 1279, 1281 n. 1 (7th Cir.1985). The Seventh Circuit has set forth five factors to be analyzed in determining whether the comments were so prejudicial as to constitute error: 1) the nature and seriousness of the prosecutorial misconduct; 2) whether the defense invited the remarks; 3) whether the trial court instructed the jury properly; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant. *Rodriguez,* 63 F.3d at 558 (emphasizing that proof of guilt is the most important element).

In applying these factors, no one disputes that the prosecutor did in fact misstate the evidence and there is no indication that the defense invited the remarks. However, defense counsel promptly objected and the trial court sustained the objection. In addition, the trial court instructed the jury that argument not based upon evidence is to be disregarded. As to the fifth factor, weight of the evidence against the defendant, the appellate court concluded that the evidence against Gill was overwhelming. As such, the appellate court ruled that the prosecutor's statements were, at best, harmless error.

Mindful of the limited nature of our inquiry, we cannot conclude that the appellate court's ruling was contrary to or an unreasonable application of Supreme Court authority. The trial court quickly alleviated any prejudice caused by the prosecutor's misstatement. The jury was free to credit or disregard Donnelly's testimony about Gill's oral statement to the police in light of all of the other evidence in the case. Given the totality of the government's circumstantial evidence and the jury's rational decision to credit Donnelly's testimony, we cannot find that the prosecution's slight misstatement of

the evidence, which was promptly cured by the trial judge, warrants habeas relief.

### 3. Ineffective Assistance of Trial Counsel

Petitioner claims that he was denied effective assistance of trial counsel because: a) trial counsel misunderstood the law regarding self-defense and accident; b) trial counsel's failed to perceive that Donnelly's trial testimony was inconsistent with the prior written statement; and c) defense counsel failed to submit an instruction that Donnelly's prior inconsistent written statement should be considered as substantive evidence, equal to Donnelly's harmful trial testimony. The appellate court reviewed and rejected these claims on direct appeal. The Illinois appellate court applied the analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in reviewing Gill's ineffective assistance of counsel for failure to perceive and properly address Donnelly's allegedly inconsistent prior statement and for failure to understand the law regarding self-defense and accident. The court initially determined that Donnelly's trial testimony was in no way inconsistent with Gill's written statement. The court then refused to second guess trial counsel's decision to forego an "accident" defense, and instead present the incident as one of self defense. In addition, the court reasoned that the resolution of Gill's guilt was a matter of credibility. The court concluded that because there was ample evidence challenging the credibility of Gill's version of the events, Gill was not constitutionally prejudiced by his trial counsel's alleged errors.

In his habeas petition, Gill also argues that his trial counsel was constitutionally insufficient for failing to raise a voluntary intoxication defense to first degree murder—a claim he raised for the first time in his post conviction petition.[2]

We will first set forth the standards that guide our analysis of Gill's ineffective assistance of counsel claims. The United States Supreme Court established a two-prong standard that a petitioner must satisfy for an

ineffective assistance of counsel claim in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. This requires a showing "that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052.

Second, a defendant must show that he or she was prejudiced by counsel's deficient performance. *Id.* To meet this showing, the defendant must establish that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Specifically, a petitioner must prove "that the deficient performance prejudiced the defense" such that it "deprived the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. *See also Banks v. Hanks*, 41 F.3d 1187, (7th Cir.1994) ("Deficient advice does not establish constitutionally ineffective assistance of counsel, ... [t]he prisoner must show that the errors prejudiced him."). Significantly, "[u]nless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

The Seventh Circuit has repeatedly stated that habeas petitioners raising ineffective assistance of counsel claims must clear a "high hurdle." *See, e.g., Griffin v. Camp*, 40 F.3d 170, 173 (7th Cir.1994). "Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland*." *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir.1987). Because counsel is presumed effective, habeas corpus petitioners face an uphill battle in establishing a successful ineffective assistance of counsel challenge. *United States v. Jimenez*, 992 F.2d 131, 134 (7th Cir.1993).

---

**2.** Gill attributes his failure to raise the issue on direct appeal to his appellate counsel's ineffective representation. We address this claim later in our opinion.

In the case at bar, there is no indication that trial counsel misunderstood the law regarding self-defense and accident. In his opening statement, defense counsel noted that Gill acted "perhaps in self-defense" and that Gill was "resisting the attack of the deceased." Trial counsel then introduced evidence demonstrating that Melvin had threatened Gill at least one time on the day of the murder. Gill's trial testimony could be characterized as non-committal, supporting a theory of accident or self-defense. However, counsel's decision to present one theory of defense to the exclusion of another is a matter of trial strategy. "We will not function as a 'Monday morning quarterback' and call the plays that we think trial counsel should have called." *See United States ex rel. Schlager v. Washington,* 887 F.Supp. 1019, 1027 (N.D.Ill.1995).

More importantly, we agree with the appellate court that Gill's "version of how the stabbing occurred ... could have led the jury to conclude that his testimony defied belief." *People v. Gill,* 202 Ill.Dec. 294, 637 N.E.2d at 1038. We find that Gill was convicted because the evidence supported the inevitable conclusion that Gill's version of the events, when compared to the other objective evidence, was incredible—not because trial counsel's presentation of self-defense was substandard, or because trial counsel should have argued accident instead of or in addition to self defense. There can be no doubt that in a perfect world, Gill's counsel would have presented his self-defense theory more consistently and may have tailored his client's trial testimony more closely to this defense. Certainly, if this Court were grading trial counsel's performance, deficiencies would be noted. However, it must be noted that some of these deficiencies were caused by the inherent inconsistencies between Gill's initial statement and his later trial testimony. Thus, in this case the facts convicted Gill, not his counsel's performance. Although his trial was not perfect, and few are, his conviction was certainly not the product of constitutional error. *United States v. Lane,* 474 U.S. 438, 445, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

Similarly, we agree with the appellate court that Donnelly's trial testimony was not inconsistent with Gill's prior written statement. Both Gill's and Donnelly's trial testimony exceeded, but did not contradict, Gill's written statement. Accordingly an instruction on Donnelly's alleged prior inconsistent statement was not warranted. Moreover, even if Gill was able to establish that trial counsel's failure to perceive and properly address Donnelly's trial testimony as inconsistent rendered trial counsel's performance unreasonable, he has failed to show the requisite prejudice. Donnelly's testimony was not alone in casting doubt upon Gill's version of the events. Gill testified that the two men were arguing and fighting just feet from the garage. But Harris, who was in the garage, and Smiley, who was in his yard, both testified that they did not hear the men fighting or struggling. Gill testified that Melvin knocked him back with such force that he blacked out and saw stars, yet Gill managed to hold on to the knife all the while. These inconsistencies undermined the credibility of Gill's testimony. Accordingly, we find that Gill cannot establish a "reasonable probability that but for [trial counsel's] unprofessional error, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

Finally, we turn to Gill's argument that his trial counsel was deficient for failing to introduce evidence supporting a theory of voluntary intoxication. Gill notes that his oral and written statement to the police indicated that he had been drinking since the early morning on the day of the murder. A review of Gill's personal history reveals that he has a history of substance abuse problems. In addition, the M.E. testified that Melvin's blood alcohol level was twice that required for illegally driving under the influence.

Despite this evidence, we cannot find trial counsel incompetent for failing to proffer an affirmative defense of voluntary intoxication. The law in Illinois is clear: in order to establish voluntary intoxication, the intoxication must be so severe as to suspend all reason. *People v. Redmond,* 265 Ill. App.3d 292, 302, 201 Ill.Dec. 937, 637 N.E.2d

526, 534 (1994). Mere intoxication is insufficient to create the defense. *People v. LePretre,* 196 Ill.App.3d 111, 117–20, 142 Ill.Dec. 578, 582–84, 552 N.E.2d 1319, 1323–24 (1990). When the record indicates that the defendant acted with any purpose or rationality at all, the defense is unavailable. *People v. Roesler,* 195 Ill.App.3d 1007, 1013, 142 Ill.Dec. 501, 552 N.E.2d 1242, 1246 (1990). The defendant's ability to recall the details of the event in question supports the trial court's decision to refuse a jury instruction on the affirmative defense. *People v. Madej,* 106 Ill.2d 201, 216–217, 88 Ill.Dec. 77, 478 N.E.2d 392, 398–99, *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 274 (1985).

An examination of the facts in the instant case supports the conclusion that Gill would not have been entitled to an instruction on voluntary intoxication. While Gill may have been able to produce testimony that he was intoxicated, the prosecution surely would have countered with Gill's ability to recall the facts surrounding his altercation with Melvin as indicated by his oral and written statement given to police hours after the stabbing. Gill's trial testimony concerning the altercation was even more specific, explaining that he was coherent enough to barbeque and cut ribs, hear someone approach him from behind, and describe in detail how Melvin threw Gill over his shoulder. Finally, Gill had the presence of mind to realize that he was in trouble and needed to take action, as evidenced by his attempt to dispose of the murder weapon and flee the scene of the crime. Under these circumstances it was not unreasonable for Gill's attorney not to raise a voluntary intoxication defense.

### 4. The Constitutional Validity of Illinois' First and Second Degree Murder Statutes and Accompanying Instructions.

■ Gill argues that the Illinois first and second degree murder statutes are unconstitutional, because while the State is required to prove every element of first degree murder beyond a reasonable doubt, a defendant must prove self-defense by a preponderance of the evidence. Gill also indicates that the first degree murder statute is unconstitution-

al because it does not require the State to prove the absence of self-defense and that the Illinois appellate court failed to address this argument.

The first degree murder statute requires the State to prove that a defendant has a specified culpable mental state by a reasonable doubt. 720 ILCS 5/9–1. The second degree murder statute places the burden upon the criminal defendant to prove the statutory mitigating factors by a preponderance of the evidence. 720 ILCS 5/9–2(c). This statute continues, however, noting that "the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder, and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing ...." *Id.* at 5/9–2(c).

Similarly, the corresponding instruction, Illinois Pattern Instruction 7.06A, provides that "the State must prove ... that the defendant was not justified in using the force which he used .... beyond a reasonable doubt .... If you find from your consideration of all the evidence that each one of these propositions has not been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder." The instruction continues, warning the jury that "You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the propositions of first degree murder." I.P.I. 7.06A.

In examining Gill's argument, the Illinois appellate court noted that the challenged statutes had withstood similar constitutional challenges in the past and rejected Gill's claim on the merits. *See, e.g., People v. Guidry,* 220 Ill.App.3d 406, 163 Ill.Dec. 87, 581 N.E.2d 38 (1991). The court further held that the tendered instructions accurately set forth the law. The Seventh Circuit's analysis of these statutes and instructions resulted in a similar conclusion. *Mason v. Gramley,* 9 F.3d 1345, 1351–52 (7th Cir.1993)

(finding the Illinois first and second degree murder statutes and accompanying jury instructions are consistent with due process principles set forth in *Patterson* and *Martin* ) (*rev'd on other grounds, Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir.1996)). Because Gill's arguments present no new twist on the several failed attacks against the Illinois first and second degree murder statutes and corresponding instructions, we cannot conclude the appellate court's holding was unreasonable.

### 5. The Trial Court's Sentencing Decision.

■ Gill next argues that the trial court abused its discretion in sentencing Gill to 25 years imprisonment because the trial court relied upon the following "improper factors": a) petitioner's flight, since evidence showed petitioner fled from panic after having hurt someone and turned himself into police hours later when he learned that Melvin had died and at most flight should go to question of guilt; b) the heinous nature of the offenses, since the court either considered a factor inherent in the offense as aggravating, or mistakenly believed the stab wound during a struggle between two drunken companions exceptionally brutal and heinous behavior indicative of wanton cruelty; and c) petitioner's alcohol addiction, where this was a status and not a proper statutory factor in aggravation. Hab. Pet. at 30. Absent from Gill's argument, however, is any contention that his sentence amounts to cruel and unusual punishment.

■ A non-capital sentence that falls within legislatively prescribed limits will not be overturned unless the trial court abused its discretion, such as by relying upon unreliable or improper information. *United States v. Vasquez,* 966 F.2d 254, 261 (7th Cir.1992); *United States v. Mitchell,* 788 F.2d 1232, 1237 (7th Cir.1986) ("As [Gill's] sentence was within the maximum provided by Congress, it is only subject to remand on appeal for a manifest abuse of discretion.") Under Illinois law, Gill faced a potential sentence of not less than twenty years and not in excess of sixty years. *See* Ill.Rev.Stat.1989, ch. 38, par. 1005–8–1. The trial court did not impose an extended term sentence, eliminating the basis of Gill's contention that the trial court improperly relied upon factors two and three in support of aggravation. Moreover, Gill's sentence is only five years above the minimum of twenty years set by the Illinois legislature. We agree with the Illinois appellate court's ruling that there is no basis for concluding that the trial court abused its discretion in sentencing Gill.

### 6. Petitioner's Initial Indictment

■ Gill argues that "the prosecutor advised the grand jury to return an indictment against Petitioner without having clearly presented the evidence whereupon the grand jury could arise at an assumption [of guilt]," presumably because Gill's confession indicated that the incident was an accident, not first degree murder.

■ The appellate court found that Gill waived this issue by failing to file a transcript of the grand jury proceedings with the court. Gill must overcome a higher hurdle than waiver, however, as he has failed to articulate a cognizable habeas claim. Alleged defects in the indictment are not constitutional error unless a petitioner can establish that 1) he did not receive adequate notice of the charges; and 2) he was therefore denied the opportunity to defend himself against the charges. *Bae v. Peters,* 950 F.2d 469 (7th Cir.1991). Gill has alleged neither. As such, this claim is not cognizable under the habeas provisions.

### 7. Ineffective Assistance of Appellate Counsel.

Gill then proceeds to attack his appellate counsel's representation. Gill charges that his appellate counsel was constitutionally deficient in two respects: 1) counsel failed to raise a claim of ineffective assistance of trial counsel for neglecting to raise a voluntary intoxication defense; and 2) counsel failed to raise a voluntary intoxication defense under the "plain error rule."

This claim is inextricably intertwined with Gill's ineffective assistance of trial counsel

claim. We have already determined that Gill cannot establish that he would have been entitled to a voluntary intoxication instruction, and that trial counsel's representation was not, therefore, constitutionally deficient. As such, we cannot find that appellate counsel was unreasonable for failing to raise these claims, or that Gill suffered the requisite prejudice from this failure. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737–38 (7th Cir.1998) (stating that petitioner could not establish ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel where the court determined trial counsel's performance was not constitutionally ineffective.) Therefore, Gill's charge against appellate counsel suffers the same fate as his ineffective assistance of trial counsel claim.

### 8. Ineffective Assistance of Post–Conviction Counsel

▮▮▮▮▮ Gill then turns his attention toward post-conviction appellate counsel. Counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), but failed to inform Gill that he had a right to respond to counsel's petition. However, Gill has no constitutional right to counsel in collateral post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Morrison v. Duckworth*, 898 F.2d 1298, 1301 (7th Cir.1990). As a result, Gill's ineffective assistance of post-conviction counsel claim cannot serve as the basis for habeas relief.

### 9. The Appellate Court's Refusal to Accept Gill's Late Petition for Rehearing.

▮▮▮▮▮ Gill's final attempt to secure habeas relief raises an issue of state law. Gill argues that the Illinois appellate court erred by first granting Gill an extension to file his petition for rehearing on post-conviction appeal, and then retracting the extension. This claim does not allege a cognizable constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law."). "The function

of federal habeas review is not to validate the outcome of State proceedings, but rather to confirm the adequacy of state proceedings for detecting and correcting constitutional error." *Smith v. Farley*, 25 F.3d 1363, 1370 (7th Cir.1994). We cannot conclude that the Illinois appellate court's decision to first grant, and then to revoke Gill's ability to file an untimely petition for rehearing on post-conviction appeal sets forth a cognizable habeas claim. Therefore, Gill's petition for habeas corpus is denied.

### CONCLUSION

The Seventh Circuit unequivocally set forth its position on habeas corpus petitions in *Tyson v. Trigg*, 50 F.3d 436 (7th Cir.1995), wherein Chief Judge Posner speaking for the court stated:

> [The petitioner] had one appeal from his conviction. Federal habeas corpus does not entitle him to another. A federal court may intervene in the state criminal process, nullifying a defendant's conviction and sentence and forcing the state to try him anew (or else simply let him go), only if the state criminal proceeding was vitiated by an infringement of one or more of a limited subset of the defendant's federal rights. If required to substitute our judgment for that of the [state] court of appeals, we might come to a different conclusion from that court. But we are not authorized to conceive of our job in that way. We are not to offer a further tier of appellate review. We are to determine only whether [the petitioner] was deprived of any of his federal rights that can be enforced in a federal habeas corpus proceeding.

*Id.* at 438.

In the instant case, Glenn Gill was involved in an altercation that resulted in the death of Melvin Cooper. Gill explained to the jury that while he had stabbed Mr. Cooper, the stabbing was justified. After hearing the evidence and arguments, the jury concluded that it was not, convicting Mr. Gill of first degree murder. The Illinois appellate court affirmed Gill's first degree murder conviction. While Mr. Gill's trial was less than perfect, we cannot conclude that it was con-

stitutionally unfair. Therefore, we find that the petition for a Writ of Habeas Corpus is without merit, and is denied. The Clerk of the Court is directed to dismiss petitioner Glenn Gill's Petition for a Writ of Habeas Corpus with prejudice. This order shall constitute a final order for purposes of Fed. R.Civ.P. 58. This case is terminated.