(No. 54756.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. GARY M. WILLINGHAM, Appellee.

*Opinion filed February 2, 1982.—Rehearing
denied March 25, 1982.*

354

Tyrone C. Fahner, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Herbert L. Caplan, Melbourne A. Noel, Jr., and Darrell Panethiere, Assistant Attorneys General, of Chicago, and John X. Breslin and Gerry R. Arnold, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Verlin R. F. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

. JUSTICE MORAN delivered the opinion of the court:

The circuit court of Peoria County acquitted defendant, Gary Willingham, of two counts of murder but convicted him of attempt (armed robbery) and sentenced him to a determinate term of 15 years in the Department of Corrections. The appellate court reversed the judgment of conviction, holding that the evidence corroborating defendant's confession to attempted armed robbery was insufficient to support his conviction of that offense. (92 Ill. App. 3d 1101.) The issues on appeal are: (1) Was defendant's confession sufficiently corroborated to sustain defendant's conviction of attempted armed robbery? (2) Were defendant's statements to the police fruits of an illegal arrest? and (3) Did defendant's sentence constitute an abuse of discretion by the trial court?

Defendant testified to the following events at trial (a previous trial ended in a mistrial). On the evening of June 4, 1979, Glenn Patton visited defendant at his apartment, which he shared with Mary Jamison. Patton informed defendant that he, along with David Thomas, was going to steal drugs from Gregory Sargent in retaliation for Sargent's sexual advances toward Betty Balestri. Defendant told Patton he wanted no part of such a plan. Patton and defendant then left the apartment and drove in separate

cars to the home of a friend, Tracy Lorenz, left there after a short visit, then drove separately to the apartment of David Thomas. Defendant drove a gold Camaro he borrowed from Mary Jamison. According to defendant, Patton and Thomas discussed stealing drugs from Sargent. Defendant stated, as he had done earlier in his apartment, that he was unwilling to participate in the scheme and left Thomas' apartment alone, driving the gold Camaro. He testified that he went to see Sargent, a friend, in an attempt to resolve the Balestri situation. On his way from the parking lot to Sargent's apartment, he passed William Lininger. Defendant stated that he was in Sargent's living room discussing the matter when a knock sounded at the door. He heard a "bump" and a shot and subsequently discovered Sargent lying in the hall. He added that he became scared, ran downstairs and out of the building, where he encountered Patton and Thomas in the parking lot, whereupon the three of them left in Patton's car. According to defendant, Patton stated that Thomas had shot Sargent. Thomas said it was an accident, and the two of them convinced defendant to dispose of the .32-caliber gun with which Sargent was shot.

William Lininger testified that in the late evening of June 4, 1979, he saw a gold or rust-colored Firebird or Camaro enter the parking lot of the Green Briar Apartments, where he and Sargent resided. Lininger then went outside and passed a black male walking from the parking lot to the apartment building, and they exchanged pleasantries about the weather. Subsequently, he observed two black males, one of whom he testified was the same man he saw earlier, exit the building, look up at some windows, and reenter the building. A short time later, Lininger heard a "pop noise" and saw two black males, whom he could not recognize, running from the building. Lininger then entered the building, at which time he observed a van pull into the parking lot. A young white male left the van and went into the building. Shortly thereafter, this same man ran outside,

talked to the driver of the van, then came back inside and told Lininger that Sargent had been hurt. At that point, Lininger saw the victim lying in the hallway and he called the police.

One of the responding officers found a .32-caliber casing and a safety mechanism near the victim. A search of the Camaro automobile revealed only, after a license plate check, that its owner was Mary Jamison. Another officer who arrived at the scene was told by the victim, Sargent, that he opened his apartment door and was shot by two men wearing stockings over their heads. The officers discovered various drugs at the scene, but found no prints of defendant.

On June 5, 1979, Lininger disclosed to police essentially the same information he subsequently related at trial. On the morning of June 9, police visited Mary Jamison at her apartment. She told them defendant left in her gold Camaro on the evening of June 4, and that he had not returned it until early the next morning. She further stated that she discovered a nylon stocking, knotted at the top, when the car was returned. Jamison also said that defendant owned a gun that looked like the .25 automatic in a picture shown to her by the police. Officer Haskins, one of the policemen who visited Jamison, testified at the suppression hearing that when the police were at the Jamison apartment she told them defendant might have placed the gun in his waistband on Monday, June 4.

At approximately 12:45 p.m., following the visit with Jamison, police effected a warrantless arrest of defendant outside his apartment. Shortly thereafter, a consent search of the gold Camaro revealed a nylon stocking and a pair of men's pants with blood on the right pocket. At a lineup later that afternoon, Lininger was unable to identify defendant as the man he saw on the night of the offense. Later that evening, after being given his *Miranda* warnings, defendant agreed to speak to the officers. He first denied any involve-

ment, but then stated that he was visiting Sargent on the night of June 4 when the victim answered his door and a "bump" and shot followed, whereupon he panicked and ran to the home of Tracy Lorenz.

On June 10, 1979, upon further interrogation, defendant offered the following confession. He stated that Patton, Thomas and he planned to rob Sargent of cocaine in retribution for Sargent's sexual advances toward Balestri. Defendant was to knock on the door and when the victim opened it, defendant would be knocked down by his companions, who would then rob the victim using an unloaded gun. Defendant stated he had disposed of the gun in a nylon stocking. The gun was ultimately discovered by the police with defendant's assistance. At trial, defendant attributed the confession to his being tired and his belief that the police would not otherwise "leave [him] alone."

We note that the State, in the appellate court, argued that defendant had waived the question of whether the confession was corroborated because of the defendant's failure to include it in his motion for a new trial. The appellate court ruled against the State on the issue under authority of Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)). However, the State has not raised the waiver issue in its petition for leave to appeal or in its briefs before this court. Accordingly, we will discuss the merits of the cor-roboration of defendant's confession.

The State argues that the independent evidence cor-roborated defendant's confession, thereby demonstrating its truthfulness. It further maintains that the *corpus delicti* can be established, and the confession rendered trust-worthy, even in the absence of independent evidence that a crime occurred. We disagree. A careful reading of the cases reveals that in order to establish the *corpus delicti* and the necessary trustworthiness to corroborate a confession, there must be some evidence, exclusive of the confession, tending to show that a crime did occur. It is axiomatic that, in order

for a conviction based on a confession to be sustained, the confession must be corroborated. (*E.g., People v. Holmes* (1977), 67 Ill. 2d 236, 240, citing *People v. Norcutt* (1970), 44 Ill. 2d 256, 263; *People v. Melquist* (1962), 26 Ill. 2d 22, 28.) The corroboration requirement stems from an attempt to assure the truthfulness of the confession and recognizes that the reliability of a confession "may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past." *Smith v. United States* (1954), 348 U.S. 147, 153, 99 L. Ed. 192, 199, 75 S. Ct. 194, 197. Accord, *People v. O'Neil* (1960), 18 Ill. 2d 461, 464.

In this State, the corroboration requirement is satisfied by proof of the *corpus delicti*. The *corpus delicti* is not required to be proved beyond a reasonable doubt exclusively by evidence independent of the confession, nor must it be established by evidence other than that which tends to connect the defendant with the crime. (*People v. Perfecto* (1962), 26 Ill. 2d 228, 229; *People v. O'Neil* (1960), 18 Ill. 2d 461, 463; *People v. Lueder* (1954), 3 Ill. 2d 487, 488.) Although various criteria have been set forth for what is necessary to establish the *corpus delicti*, we believe the most precise explanation was given in *People v. Perfecto* (1962), 26 Ill. 2d 228, 229, where this court stated:

" 'The true rule is that if there is evidence of corroborating circumstances which tend to prove the *corpus delicti and* correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. (*People v. Borrelli*, 392 Ill. 481.) The same evidence may be used to prove both the existence of the crime and the guilt of the defendant, the test being whether the whole evidence proves the facts that a crime was committed and that the accused committed it. *People v. Brown*, 379 Ill. 262.' *People v. Gavurnik*, 2 Ill. 2d

190, at 194." (Emphasis added.)

Thus, in establishing the *corpus delicti,* there must be some evidence, apart from the confession, demonstrating that a crime occurred. Once the required showing has been made, the circumstances along with the confession may be considered in determining whether the *corpus delicti* is sufficiently proved (as well as the guilt of the defendant). Accord, McCormick, Evidence § 158, at 346-47 (2d ed. 1972).

Both parties make a reference to a two-prong test whereby a conviction based upon a confession will be upheld if independent evidence (1) shows a crime did occur, *or* (2) corroborates or bolsters the circumstances in the confession. We acknowledge the statement made in several cases that if there is corroborating evidence that tends to confirm the circumstances related in the confession, both can be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. (*E.g., People v. Melquist* (1962), 26 Ill. 2d 22, 28-29; *People v. O'Neil* (1960), 18 Ill. 2d 461, 463-64; *People v. Gavurnik* (1954), 2 Ill. 2d 190, 194.) However, this statement does not obviate the requirement that either some independent evidence or the corroborating evidence tend to establish that a crime occurred. In the above-cited cases, the corroborating evidence did, in fact, tend to prove that a crime occurred and was properly considered along with the confession in determining that the *corpus delicti* was sufficiently proved.

We note that in *People v. Norcutt* (1970), 44 Ill. 2d 256, this court, in determining whether the crimes to which defendant confessed were committed by the defendant, stated that it was sufficient if the other evidence in the case tended to show that a crime did in fact occur or tended to corroborate the confession. It was not stated, however, that either factor by itself was sufficient to establish the *corpus delicti.* In view of the narrow issue to which the statement was addressed, we interpret the comment to mean that

either factor was sufficient to connect defendant to the offense, a requirement that must be satisfied in addition to the *corpus delicti* in order to support a conviction. See *People v. Perfecto* (1962), 26 Ill. 2d 228, 229; McCormick, Evidence § 158, at 347-48 (2d ed. 1972).

The necessity of showing that a crime did occur in establishing the *corpus delicti* is illustrated by *People v. O'Neil* (1960), 18 Ill. 2d 461, a case involving an arson confession, which was cited by *People v. Norcutt* for the proposition that it is sufficient for a conviction if other evidence in the case tends to corroborate the confession. In *O'Neil,* this court stated:

"Experience has shown that untrue confessions may be given to gain publicity, to shield another, to avoid apparent peril, or for other reasons, and because of this, the law demands corroborating proof that a crime did in fact occur before the individual is punished therefor. However, *once this proof has been acquired,* no further reason exists for ignoring a confession when considering whether the *corpus delicti* has been established." (Emphasis added.) 18 Ill. 2d 461, 464.

Similarly, in *People v. Lueder* (1954), 3 Ill. 2d 487, this court, in holding that the *corpus delicti* of arson was not established, remarked, "[I]t may be seen that the independent evidence tends to establish only that a building burned. There is nothing, save the confession alone, which suggests or tends to corroborate the element that some person wilfully fired the building." 3 Ill. 2d 487, 489.

In summation, if the independent evidence *tends* to prove that an offense occurred, then such evidence, if corroborative of the facts contained in the confession, may be considered along with the confession in establishing the *corpus delicti.* In such event, the independent evidence need not establish beyond a reasonable doubt that an offense did occur.

Section 8—4(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)) provides:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

Section 18—2(a) of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a)) provides:

"A person commits armed robbery when he [takes property from the person or presence of another by the use of force or by threatening imminent use of force] while armed with a dangerous weapon."

Defendant argues that there is no independent evidence that an offense occurred and that the independent evidence did not sufficiently corroborate the confession. The record discloses that defendant, himself, testified that Patton told him he and Thomas were going to rob the victim. After purportedly expressing his objection, defendant still accompanied Patton to Thomas' apartment. Following more discussion concerning the robbery, to which defendant again purportedly expressed his disagreement, defendant drove to the victim's apartment in the gold Camaro. Lininger testified that he observed a gold Camaro or Firebird enter the parking lot and he saw a man walking from that area toward the building. The man passed him, at which time they spoke briefly about the weather. Defendant admitted this occurrence. Lininger testified that shortly thereafter, during which time he did not see anyone else enter the apartment building, the man whom he had passed came out of the building with another man. The former stood by the doorway while the latter walked to the end of the building and looked up at some windows. The two then reentered. Lininger then heard a "pop noise" and observed two men fleeing. Eventually, the .32-caliber gun that fired the fatal shot was recovered with defendant's assistance, wrapped in a nylon stocking.

Defendant's going to the apartment of the intended victim after a robbery was discussed constituted a substan-

tial step, and the above-related independent evidence tended to show that defendant took this substantial step with the intent to commit an armed robbery. Any alleged discrepancies between the independent evidence and the circumstances related in the confession, such as the victim speaking of two men, not three, and Lininger observing two men fleeing, rather than three, did not necessarily create inconsistencies.

From our review, we find that independent evidence tended to show that an offense occurred. Further, the record reveals that the same evidence corroborated the facts contained in defendant's confession. We hold that the *corpus delicti* was established and it was not error for the trial court to admit the confession.

Defendant next argues that his statements should have been suppressed as fruits of an illegal arrest. To support that argument he asserts that police had no probable cause for his arrest. This court has held that probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Robinson* (1976), 62 Ill. 2d 273, 276; *People v. McCrimmon* (1967), 37 Ill. 2d 40, 43.) In determining if probable cause existed, this court has also stated: "'Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. [Citations.]'" (*People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, quoting *People v. Clay* (1973), 55 Ill. 2d 501, 504-05.) Moreover, we will not disturb the trial court's finding of

probable cause unless that finding is manifestly erroneous. *People v. Clay* (1973), 55 Ill. 2d 501, 505.

Prior to the time of defendant's arrest on June 9, as previously related, the police knew that Sargent had been shot and died, that Lininger saw a gold Camaro arrive at the apartment complex where the offense occurred, that a black male walked into the building from the area where the Camaro was parked, that two men, one of whom may have been the man he first saw enter the building, came out of the building, then reentered the building, and that a shot followed. The victim, Sargent, told police he had been shot by two men wearing nylon stocking masks. Upon locating the owner of the Camaro they were told that, on the night of the offense, she had lent the Camaro to defendant, who did not return it until early the next morning. She told police that when the Camaro was returned she found a nylon stocking knotted at the top inside the automobile. She also told police that defendant owned a gun similar to a .25-caliber gun and that he might have taken it with him when he left on the night of the offense. Following the receipt of this information, the police arrested defendant. We believe the record clearly reveals that the police had a reasonable belief that an offense had been committed and that defendant was involved in its commission. The trial court's finding of probable cause was not contrary to the manifest weight of the evidence and will not be disturbed.

Defendant's final argument on appeal is that the trial court abused its discretion in sentencing defendant to 15 years' imprisonment. A reviewing court may intervene only upon a showing that the trial court abused the sentencing discretion entrusted to it. (*People v. Cox* (1980), 82 Ill. 2d 268, 275; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) The trial court is the appropriate forum to determine a suitable sentence, and the trial judge's decisions with regard to sentencing must be accorded great deference and weight. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93; *People v.*

*Perruquet* (1977), 68 Ill. 2d 149, 154.) Our review indicates that the trial court considered factors in mitigation and aggravation. We note that the 15-year sentence was within the proper range. (See Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(c)(2), 18—2(b), 1005—8—1(a)(4).) An extended-term sentence was not imposed. The record reveals that at the time of this offense, the defendant was on parole for a previous armed robbery and the instant sentence was to be served concurrently with the former conviction. Under these circumstances, we hold that the trial court did not abuse its discretion.

For the above-stated reasons, the judgment of the appellate court is reversed and the circuit court's judgment is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*