907 N.E.2d 410 (2009)
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
William E. SARGENT, Defendant-Appellant.
No. 2-07-0516.
Appellate Court of Illinois, Second District.
March 27, 2009.
As Modified Upon Denial of Rehearing May 19, 2009.
*412 Patricia Unsinn, Deputy Defender, Deborah K. Pugh (both Court-appointed), Office of the State Appellate Defender, Chicago, for William E. Sargent.
Ronald G. Matekaitis, DeKalb County State's Attorney, Sycamore, Lawrence M. Bauer, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Catherine A. Voigt, Glen Ellyn, for the People.

Modified Upon Denial of Rehearing
Justice O'MALLEY delivered the opinion of the court:
Defendant, William Sargent, appeals from his conviction, after a jury trial, of three counts of predatory criminal sexual assault and two counts of aggravated criminal sexual abuse against M.G. and J.W., his two minor stepsons. On appeal, defendant argues that the trial court erred by failing to tender to the jury an instruction governing hearsay evidence pursuant to section 115-10(c) of the Code of Criminal Procedure (Code) (725 ILCS 5/115-10(c) (West 2006)), that four of his convictions must be reversed because the State failed to offer proof of the corpus delicti of the crimes, and that the trial court improperly imposed two concurrent seven-year sentences for aggravated criminal sexual abuse to run consecutively to his life sentence for his remaining crimes. The State concedes the sentencing argument. For the reasons that follow, we affirm the judgment of the trial court with the modification that defendant's seven-year sentences run concurrently with his life sentence.
Defendant was charged with one count of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2004)) for his allegedly placing a part of his body in the anus of J.W., three counts of predatory criminal sexual assault for his allegedly placing his finger in the anus of M.G., and two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(I) (West 2004)) for allegedly fondling the penis of M.G. for sexual gratification.
M.G., who was eight years old at the time of the trial and six years old at the time of defendant's alleged offenses, testified as the State's first witness, but his substantive testimony consisted only of his answering that he did not remember in response to being asked if his stepfather had done anything to him "that [he] didn't like" during the time they lived together. Joseph Veronda, an Illinois Department of Children and Family Services (DCFS) child protective investigator, testified that, in an interview unrelated to the current charges against defendant, M.G. said that "he had a secret." Veronda recalled that, *413 when he asked M.G. what the secret was, M.G. told him that "Bill puts Bill's finger in [M.G.]'s butt." Veronda later interviewed M.G. regarding the allegations, and the State submitted a video of the interview as evidence.
In the video, Veronda asks M.G. to tell Veronda about a secret M.G. and "Bill" had, and M.G. tells Veronda (through talking and through writing on an easel pad) that "Bill" put his finger in M.G.'s "butt" at the house in which Bill and M.G.'s mother lived, when M.G. was six years old. When Veronda asks M.G. how many times such incidents occurred, M.G. responds first that he does not know how many times the incidents happened, but, when asked if it happened one time or more than one time, M.G. answers that it happened one time.
Melissa Sargent, the mother of the two alleged victims, testified that she was married to defendant when he allegedly committed the offenses and that, while she was at work during the day, the boys would be placed in day care or watched by defendant.
J.W.'s aunt and then-guardian testified that she asked J.W. about the allegations against defendant after she learned that defendant had been arrested. She recalled that J.W. "got quiet" after she explained to him what sexual abuse was but that J.W. eventually told her that defendant "attempted to place his penis in [J.W.'s] butt" "at least once a month." The aunt said that, when she asked if defendant abused J.W. in any other way, J.W. reported that defendant had not.
During his testimony, J.W. stated that defendant "would try to stick [his] penis in [J.W.'s] butt" and that this occurred "[l]ike once a month" for the several months that he and defendant lived in the same apartment.
The State's next witness, a forensic interviewer, verified the authenticity of a video recording of her December 14, 2004, interview with J.W. In the interview recording, J.W. tells the interviewer that his then-stepfather Bill once came into J.W.'s room and "tried to put his winkie" or his "private" in J.W.'s "butt"; J.W. says that Bill did this approximately once a month. Later in the interview, J.W. tells the interviewer that, when he said that his stepfather "tried" to abuse him, J.W. was expressing what he wished had happened. J.W. also says that his stepfather had touched J.W.'s "winkie" "once or twice." J.W. initially tells the interviewer that his stepfather had never made J.W. touch his penis, but J.W. later admits that he "once or twice" was forced to touch his stepfather's penis. Later in the video, J.W. denies ever touching his stepfather's penis. J.W. tells the interviewer that he had never seen his stepfather sexually abuse M.G.
Detective Mark Nachman testified that he interviewed J.W. on December 29, 2004, and defendant on December 9, 2004, and he verified the authenticity of video recordings of both interviews.
In the recording of the December 29, 2004, interview, J.W. tells Nachman that he was nervous during his December 14 interview. J.W. tells Nachman that for several months "Bill" would stick his "private" up J.W.'s "butt" about once a month. J.W. says that the first incident occurred in the living room at their home on Kimberly Drive, while his mother was not home. J.W. recalls that Bill came into J.W.'s room, where J.W. and M.G. were playing, and dismissed M.G. before placing his penis in J.W.'s anus. He says that, in a second incident, Bill approached J.W. while J.W. was showering, stuck his penis in J.W.'s anus, and "tried to suck [J.W.'s] penis." J.W. describes a third incident in which Bill came into his bedroom while *414 J.W. was preparing to sleep and again tried to sexually abuse him. J.W. denies that he had ever touched Bill's penis, but he says that Bill had once touched J.W.'s penis. During the interview, J.W. estimates that Bill sexually abused him 12 times in total. Just as in the previously recorded interview, J.W. says that he had never seen his stepfather sexually abuse M.G.
In the video of his interview with Nachman, defendant says that he placed his finger in M.G.'s anus 50 to 70 times within the past year or year and a half. He states that the incidents normally occurred in the bathroom but that they had also occurred in the living room and in M.G.'s bedroom. When pressed by Nachman, defendant further admits that he had touched M.G.'s penis during approximately half of the incidents. Defendant also recalls that he caused M.G. to watch defendant masturbate approximately 30 times. With respect to J.W., defendant estimates that he had touched J.W.'s anus with his finger 30 to 40 times, often in the shower, and that he attempted to masturbate J.W. 20 times. Defendant also recalls that J.W. helped defendant masturbate several times. Defendant further says that there were approximately 10 to 20 incidents involving J.W., M.G., and defendant at the same time. Defendant states that, during those incidents, he had made J.W. and M.G. touch each other's penises.
After Nachman's testimony, the State called Jacqueline Weber as an expert witness on the subject of child sexual abuse accommodation syndrome, which she described as a "recognized form of post-traumatic stress disorder" that affects "the typical response pattern of the typical child who has been sexually abused." Weber testified that children who are abused often keep the abuse secret or disclose the abuse incrementally.
Defendant testified next on his own behalf. He testified that he lived with M.G., J.W., and their mother in an apartment during the relevant time periods. Defendant said that his admissions in the recorded interview with Nachman were false and that the video showed him making up the confessions because he was intimidated by Nachman and hoped his confessions would end the interview. In his testimony, defendant denied having sexually abused either J.W. or M.G. On cross-examination, defendant continued to assert that he confessed to Nachman because he wanted to tell Nachman what Nachman wanted to hear, but he acknowledged that the video recording of his interview showed him repeatedly denying having performed oral sex on the boys or having put his penis in the anuses of the boys.
The trial ended with testimony from defendant's sister and rebuttal testimony from Nachman, and the case was submitted to the jury. Neither party suggested, and the trial court did not tender, a jury instruction tracking the language of section 115-10(c) of the Code (725 ILCS 5/115-10(c) (West 2006)), which provides as follows:
"If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, * * * the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115-10(c) (West 2006).
The trial court did give the jury an instruction regarding the assessment of witness credibility in general:
"In considering the testimony of any witness you may take into account his ability and opportunity to observe, his *415 age, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."
See Illinois Pattern Jury Instructions, Criminal, No. 1.02 (4th ed.2000). The jury returned a guilty verdict on all counts against defendant, and the trial court sentenced defendant to a term of natural life imprisonment for the predatory-criminal-sexual-assault convictions. The trial court imposed concurrent seven-year terms of imprisonment, to run consecutively to defendant's life sentence, for the aggravated-criminal-sexual-abuse convictions. Defendant timely appeals.
Defendant first argues that four of his convictions must be reversed because the State presented sufficient evidence to prove the corpus delicti of only one instance of abuse against M.G. Where a defendant on appeal challenges the sufficiency of the evidence against him, the inquiry for the reviewing court is whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. People v. Ross, 329 Ill.App.3d 872, 883, 264 Ill.Dec. 116, 769 N.E.2d 953 (2002). "Proof of guilt for a criminal offense may be divided conceptually into proof that an injury or loss occurred, that the cause of the loss was criminal in nature, and that the accused was the offender." People v. Furby, 138 Ill.2d 434, 445-46, 150 Ill.Dec. 534, 563 N.E.2d 421 (1990). The term "corpus delicti" refers to the first two of these components. Furby, 138 Ill.2d at 446, 150 Ill.Dec. 534, 563 N.E.2d 421. "[P]roof of the corpus delicti may not rest exclusively on a defendant's extrajudicial confession, admission, or other statement." Furby, 138 Ill.2d at 446, 150 Ill.Dec. 534, 563 N.E.2d 421. Rather, "for a conviction based on a confession to be sustained, the confession must be corroborated." People v. Willingham, 89 Ill.2d 352, 358-59, 59 Ill.Dec. 917, 432 N.E.2d 861 (1982). The corroboration requirement "reflects a long-standing mistrust of extrajudicial confessions" (Furby, 138 Ill.2d at 447, 150 Ill.Dec. 534, 563 N.E.2d 421), and it "stems from an attempt to assure the truthfulness of the confession and recognizes that the reliability of a confession `may be suspect if it is extracted from one who is under the pressure of a police investigation  whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past.'" Willingham, 89 Ill.2d at 359, 59 Ill.Dec. 917, 432 N.E.2d 861, quoting Smith v. United States, 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192, 199 (1954). This requirement has deep roots in Illinois law, stretching to the earliest years of our supreme court's jurisprudence, when the supreme court explained it as follows:
"The corroborative evidence * * * must consist of facts or circumstances, appearing in evidence, independent of the confession, and consistent therewith, tending to confirm and strengthen the confession. Without [proof outside the confession], mere confessions that the crime charged has been committed by some one, or of some fact or circumstance confirmatory of the confession, a party accused of crime cannot be found guilty, unless such confession be judicial or in open court. * * *
It is the mere naked confession, uncorroborated by any circumstance inspiring belief in the truth of the confession, arising out of the conduct of the accused, or otherwise, we hold insufficient to convict, and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the corpus delicti." Bergen v. The People, 17 Ill. 426, 429 (1856).
*416 Although the wisdom of this rule has been challenged by the State and criticized by learned writers, it has endured in our law. See People v. Dalton, 91 Ill.2d 22, 29-30, 61 Ill.Dec. 530, 434 N.E.2d 1127 (1982) (collecting criticizing authorities but rejecting the State's argument that the rule should be abandoned).
The above authority dictates that defendant's confession cannot sustain his convictions unless accompanied by some independent corroborating evidence. Such independent evidence along with the confession "may be considered in determining whether the corpus delicti is sufficiently proved (as well as the guilt of the defendant)." Willingham, 89 Ill.2d at 360, 59 Ill.Dec. 917, 432 N.E.2d 861. Before turning to the facts of the instant case, though, we clarify two important facets of the application of the rule.
First, the corroboration rule requires not only that the independent evidence corroborate the confession, but also that it tend to establish the corpus delicti of the charged offense. The rationale underlying the rule would not seem to support this requirement. As noted, the rule was created to address the notion that extrajudicial confessions are suspect without independent corroboration. While evidence establishing the commission of a crime will certainly provide very strong corroboration of an extrajudicial statement about the crime, such evidence is not the only means of buttressing the credibility of a confession. Bergen, 17 Ill. at 428-29 (proof of corpus delicti "is necessarily corroborative of a confession," but so is "[p]roof of any number of" the "great variety of facts" that "usually attend * * * the commission of every crime"); see also People v. Norcutt, 44 Ill.2d 256, 263, 255 N.E.2d 442 (1970) ("It is enough if the other evidence either tends to show that a crime did in fact occur [citation] or to corroborate the confession"). Thus, as noted above, Bergen held that "the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the corpus delicti." Bergen, 17 Ill. at 429. However, perhaps due to the close relationship between independent corpus delicti evidence and independent corroborating evidence, the common law has developed since the decision in Bergen to add a requirement that the independent evidence tend to establish the commission of a crime, and that requirement is now firmly entrenched. See Willingham 89 Ill.2d at 360, 59 Ill.Dec. 917, 432 N.E.2d 861 (rejecting the argument that independent evidence may show that a crime occurred or otherwise may corroborate the confession); see also People v. Phillips, 215 Ill.2d 554, 576, 294 Ill.Dec. 624, 831 N.E.2d 574 (2005) ("There must be some evidence, independent of the confession, tending to show the crime did occur").
The second facet of the rule we must clarify is the issue of what corroboration is necessary when a single confession details more than one crime. There is some precedent to suggest that, in such a situation, the State need present independent corroborating evidence tending to establish the corpus delicti of only one of the crimes. In People v. Salinas, 347 Ill. App.3d 867, 283 Ill.Dec. 337, 807 N.E.2d 1178 (2004), the First District cited two cases in which, according to the court in Salinas, "the courts held that the State established the corpus delicti for attempted armed robbery when each defendant confessed to the crimes of both robbery and murder, although the independent evidence directly corroborated only the portions of the confession[s] relating to the murder charge[s]." Salinas, 347 Ill. App.3d at 883, 283 Ill.Dec. 337, 807 N.E.2d 1178, citing People v. Howard, 147 Ill.2d 103, 167 Ill.Dec. 914, 588 N.E.2d 1044 *417 (1991), and People v. Montes, 192 Ill. App.3d 874, 140 Ill.Dec. 49, 549 N.E.2d 700 (1989). There is some logical merit to this position, because, as Salinas noted, "the purpose for requiring independent evidence * * * is to ensure that the confession itself is reliable." Salinas, 347 Ill. App.3d at 883, 283 Ill.Dec. 337, 807 N.E.2d 1178. However, to support this proposition, Salinas misstated the holdings of both Howard and Montes, the cases it cited for support. In both cases, the courts held not that independent evidence of one crime mentioned in a confession was sufficient corroboration to allow the confession to prove the corpus delicti of the other crime, but rather that the same independent evidence tended to prove the corpus delicti of both crimes mentioned in the confession. See Howard, 147 Ill.2d at 127, 167 Ill.Dec. 914, 588 N.E.2d 1044 (independent evidence "established the corpus delicti of the attempted armed robbery charge"); Montes, 192 Ill.App.3d at 881, 140 Ill.Dec. 49, 549 N.E.2d 700 ("It is our judgment that the evidence independent of the confession sufficiently corroborated the defendant's confession of attempted armed robbery"). As the dissenting justice in Salinas noted, our supreme court has actually taken the opposite approach and required independent evidence of all crimes mentioned in a single confession. See Salinas, 347 Ill.App.3d at 885, 283 Ill.Dec. 337, 807 N.E.2d 1178 (Reid, J., dissenting), citing People v. Bounds, 171 Ill.2d 1, 215 Ill.Dec. 28, 662 N.E.2d 1168 (1995). In Bounds, the defendant confessed to (and was convicted of) murder, aggravated criminal sexual assault, and aggravated kidnaping (Bounds, 171 Ill.2d at 16, 215 Ill.Dec. 28, 662 N.E.2d 1168), and he argued on appeal that there was no independent evidence to corroborate the parts of his confession relating to aggravated criminal sexual assault and aggravated kidnaping (Bounds, 171 Ill.2d at 42, 215 Ill.Dec. 28, 662 N.E.2d 1168). The supreme court addressed the issue by determining whether the independent evidence tended to establish the corpus delicti of all the crimes mentioned in the confession. See Bounds, 171 Ill.2d at 43-46, 215 Ill.Dec. 28, 662 N.E.2d 1168. The supreme court's approach directly contradicts the holding in Salinas, and we must follow the supreme court.
From the above authority, we draw the rule that, in order to sustain defendant's convictions, the evidence independent of defendant's confession must both corroborate his confession and tend to establish the corpus delicti of each crime to which he confessed. However, there is no requirement that the independent evidence be so strong that it establishes the corpus delicti on its own. Indeed, "the independent evidence need not establish beyond a reasonable doubt that an offense did occur." Willingham, 89 Ill.2d at 361, 59 Ill.Dec. 917, 432 N.E.2d 861. "[I]f the independent evidence tends to prove that an offense occurred, then such evidence, if corroborative of the facts contained in the confession, may be considered along with the confession in establishing the corpus delicti." (Emphasis in original.) Willingham, 89 Ill.2d at 361, 59 Ill.Dec. 917, 432 N.E.2d 861. Further, "[t]he evidence may consist of circumstantial evidence," and it "need not correspond to the confession in every detail so long as it tends to confirm and strengthen the confession." People v. Williams, 317 Ill. App.3d 945, 954, 252 Ill.Dec. 236, 742 N.E.2d 774 (2000). This lower standard makes sense, because, in applying the corroboration rule, the question is not the defendant's guilt or innocence  a question put to much more stringent proof  but whether his extrajudicial confession  very strong proof of guilt if it can be believed  can sustain a conviction.
*418 However, although the standard for corroboration is very low, it is not as low as some authority would indicate. In Salinas, the First District held that the corroboration rule requires only that the independent evidence tend to show the occurrence of "a" crime (as opposed to "the" crime to which the defendant confessed). See Salinas, 347 Ill.App.3d at 880-81, 283 Ill.Dec. 337, 807 N.E.2d 1178. Such an interpretation would separate the corroboration rule from its purpose, which is to ensure that a particular confession is reliable; the fact that some crime, unrelated to the confession to be verified, has been committed does not in any way corroborate the confession. The Salinas majority justified its ruling by reasoning that, because "the identity of the accused as the offender is not part of the corpus delicti logically, the specific offense also is not part of the corpus delicti. This is so because the identity of the accused will often determine which specific offense is charged, e.g., whether the offender acted directly or in an inchoate manner * * *. * * * [T]he independent evidence need only show that a crime occurred, not the crime for which the defendant specifically was convicted." (Emphases in original.) Salinas, 347 Ill.App.3d at 881, 283 Ill.Dec. 337, 807 N.E.2d 1178. We disagree with this reasoning. While corpus delicti may not include the specific offense charged, which can vary depending on a number of factors, it does include the specific incident under investigation. A single corpus delicti can correspond to any of several distinct charges, depending on circumstances unrelated to corpus delicti; for example, a single body can serve as the corpus delicti for either a first- or a second-degree murder charge, depending on the circumstances surrounding the crime. The reasoning in Salinas conflates these concepts.
Further, as the dissenting justice in Salinas observed, the Salinas majority's reasoning also dictates absurd results: "If [the Salinas majority's holding is correct], then * * * the corpus delicti in [a solicitation of murder for hire case] could be proved if it could be shown that [the defendant] * * * violated a traffic law." Salinas, 347 Ill.App.3d at 884, 283 Ill.Dec. 337, 807 N.E.2d 1178 (Reid, J., dissenting). The dissenting justice was absolutely correct that the Salinas majority described the requirements for independent evidence in a way that would all but eviscerate the corroboration rule, and we must depart from Salinas's interpretation of the rule.
However, that is not to say that the Salinas majority erred in its result. The Salinas majority relied on evidence of a murder as independent evidence corroborating the defendant's confession to solicitation of murder for hire. The majority's error was not its reliance on this evidence, but its description of the significance of this evidence. The evidence of a murder corroborated the defendant's confession not because it was evidence of "a" crime, even if it was not evidence of "the" crime to which he confessed; it corroborated his confession because it was circumstantial evidence of the solicitation of murder for hire. Especially in cases involving closely related offenses  such as murder and murder for hire, or different types of sexual assault  evidence of one of the interrelated offenses will very often serve as circumstantial evidence of the other offenses. Therefore, although we disagree with the rule stated in Salinas, the result in the case serves to make the point that evidence of one crime mentioned in a confession can serve as circumstantial evidence for a closely related charge. That point becomes very relevant in the current case.
Defendant argues that no independent evidence was presented to corroborate his statement that he used his finger to penetrate M.G.'s anus more than one time or *419 that he ever touched M.G.'s penis. We can dispense quickly with the argument that there was no independent evidence of more than one digital anal penetration. As defendant himself acknowledges in his brief, Veronda testified that M.G. told him that defendant "puts [his] finger in [M.G.]'s butt." This quote implies more than one occurrence, and it therefore tends both to establish the corpus delicti of more than one occurrence and to corroborate defendant's extrajudicial statement that there was more than one occurrence.
The question of whether there was independent evidence tending to show that defendant touched M.G.'s penis is more interesting. Defendant emphasizes that, during M.G.'s interview, M.G. never specifically referenced defendant's touching his penis, and defendant further notes that, when asked how many times defendant had penetrated M.G.'s anus with his finger, M.G. answered that there had been one such occurrence. Defendant contends that M.G.'s statements undercut or contradict the possibility that the additional incidents defendant described actually occurred. However, especially in light of M.G.'s age, it is crucial that we consider the full context of M.G.'s statements, instead of parsing each of his individual statements for their literal meanings. The broader context of M.G.'s interview, considered in light of M.G.'s age, reveals more than defendant's isolated observations. Throughout the interview, M.G. demonstrated reluctance to talk about the allegations, and he often became evasive or quiet when Veronda steered the conversation to the subject. Thus, M.G.'s demeanor certainly lent credence to defendant's admissions. Further, M.G. actually described an incident in which defendant had digitally penetrated his anus. While M.G. did not specifically reference the several instances of abuse charged against defendant, the crimes at issue here, like the crimes in Salinas, are precisely the type of closely related charges for which evidence of one charge can serve as circumstantial evidence for the remaining charges. M.G.'s description of a single incident during the time they lived together strongly corroborated defendant's statement that he had abused M.G. during the same time.
J.W.'s video statement added to the evidence of an abusive relationship between defendant and M.G. J.W.'s statements describe defendant's engaging in a pattern of conduct beginning with anal penetration and also including improper touching of the penis  this could certainly serve as circumstantial evidence that defendant's conduct toward M.G. became habitual and involved additional types of abuse. J.W.'s statements and M.G.'s statements  especially when paired with M.G.'s demeanor during the interview, the evidently habitual nature of the crimes at issue, and the closely related nature of the crimes at issue  constituted direct evidence of a single incident of misconduct and circumstantial evidence of a relationship involving other types of abuse. In the continuum of corroboration-rule cases, with no corroboration at one end (the common hypothetical of a murder confession with no accompanying body or evidence of a missing person comes to mind) and complete corroboration at the other, the facts of this case place it nearer the full-corroboration end of the continuum.
The independent evidence of an abusive relationship was not definitive, but it met the rule's minimal requirements that it corroborate defendant's statement and "tend" to establish the corpus delicti of the crimes of which defendant was convicted. See Willingham, 89 Ill.2d at 361, 59 Ill. Dec. 917, 432 N.E.2d 861. We accordingly consider defendant's statement to have been sufficiently supported by independent corroborating evidence to allow it to be *420 used, along with the independent evidence, to prove the corpus delicti of the crimes. See Phillips, 215 Ill.2d at 576, 294 Ill.Dec. 624, 831 N.E.2d 574 (once a confession is corroborated by independent evidence, the confession and the independent evidence may be considered together to determine whether the defendant's guilt has been proven beyond a reasonable doubt).
Defendant argues that the decision in People v. Richmond, 341 Ill.App.3d 39, 274 Ill.Dec. 721, 791 N.E.2d 1132 (2003), dictates a different result. In Richmond, the defendant was convicted of two counts of predatory criminal sexual assault based on contact between his penis and the victim's anus and his penis and the victim's vagina. Richmond, 341 Ill.App.3d at 43, 274 Ill. Dec. 721, 791 N.E.2d 1132. In her testimony, the victim described an incident in which she went to the defendant's apartment to visit her friend, when, upon her entry into the apartment, the defendant "pushed her onto the bed, pulled down her shorts, `pulled his thing out,' and * * * put his [penis] in her butt." Richmond, 341 Ill.App.3d at 43, 274 Ill.Dec. 721, 791 N.E.2d 1132. The defendant gave police a statement that "was consistent with [the victim's] account in nearly all respects" except that it added that the defendant also twice tried to penetrate the victim vaginally. Richmond, 341 Ill.App.3d at 44, 274 Ill.Dec. 721, 791 N.E.2d 1132. On appeal, the court held that the defendant's statement regarding vaginal penetration was not sufficiently corroborated, because "[a]ll the other evidence provided by the State at trial proved only anal penetration." Richmond, 341 Ill.App.3d at 46, 274 Ill.Dec. 721, 791 N.E.2d 1132.
We think that Richmond employed an unduly onerous standard for the independent evidence corroborating the confession. The defendant confessed to a single encounter in which he sexually assaulted the victim both anally and vaginally, and the victim not only confirmed that the encounter occurred and that the defendant assaulted her anally, but she apparently also corroborated several other incidental details of his confession. This independent evidence would seem to meet the corroboration rule's limited requirement that the independent evidence "tend" to establish corpus delicti even circumstantially. In fact, on the continuum of corroboration cases, this evidence probably places Richmond very close to full corroboration. The court in Richmond found deviation between the confession and the independent evidence only by very finely parsing both, but the facts of that case leave no reasonable doubt that the incident to which the defendant confessed did actually occur. The corroboration rule requires no more. Especially in cases of closely related crimes, such as sexual abuse or assault cases, the parsing approach used in Richmond would almost always lead to reversal or acquittal, unless the victim specifically describes each individual act in what is typically a series of related acts. We therefore elect not to follow Richmond and instead adhere to the analysis we laid out above. Pursuant to that analysis, we conclude that the independent evidence here sufficiently corroborated defendant's confession. Based on all of the evidence, including both defendant's confession and the independent corroborating evidence, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt.
Defendant's second argument on appeal is that the trial court committed reversible error by failing to instruct the jury in accordance with section 115-10(c) of the Code, which provides that, if hearsay statements of the victims of certain types of sex crimes are allowed into evidence, "the court shall instruct the jury *421 that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child * * *, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115-10(c) (West 2006). Defendant concedes that he neither tendered a section 115-10(c) instruction nor raised the issue in a posttrial motion. "Generally, a defendant forfeits" or procedurally defaults "review of any supposed jury instruction error if he does not object to the instruction or offer an alternative at trial and does not raise the issue in a posttrial motion." People v. Piatkowski, 225 Ill.2d 551, 564, 312 Ill.Dec. 338, 870 N.E.2d 403 (2007). "This principle encourages a defendant to raise issues before the trial court, thereby allowing the court to correct its errors before the instructions are given, and consequently precluding a defendant from obtaining a reversal through inaction." Piatkowski, 225 Ill.2d at 564, 312 Ill.Dec. 338, 870 N.E.2d 403. Defendant asks that we overlook his forfeiture and review his claim of error under the plain-error doctrine.
Supreme Court Rule 451(c) (210 Ill.2d R. 451(c)) provides that "substantial defects" in criminal jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." Rule 451(c) has been deemed "coextensive with the plain-error clause of Supreme Court Rule 615(a), and the two rules are construed identically." Piatkowski, 225 Ill.2d at 564, 312 Ill.Dec. 338, 870 N.E.2d 403; see 134 Ill.2d R 615(a). Under Rule 615(a), "[a]ny error, defect, irregularity, or variance" that "does not affect substantial rights shall be disregarded" on appeal, but "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill.2d R. 615(a).
Our supreme court has explained that the plain error doctrine contained in Rule 615(a) allows a reviewing court to consider unpreserved error in two situations: "when (1) a clear or obvious error[[1]] *422 occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant * * *, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." Piatkowski, 225 Ill.2d at 565, 312 Ill.Dec. 338, 870 N.E.2d 403, citing Herron, 215 Ill.2d at 186-87, 294 Ill.Dec. 55, 830 N.E.2d 467. In addressing a plain-error argument, a court must first determine whether error occurred at all (People v. Hudson, 228 Ill.2d 181, 191, 319 Ill.Dec. 840, 886 N.E.2d 964 (2008)); if so, then the court proceeds to consider the two prongs of the plain-error doctrine. Under both prongs, the burden of persuasion rests with the defendant, and, if the defendant fails to establish plain error, then his procedural default must be honored. People v. Naylor, 229 Ill.2d 584, 593, 323 Ill.Dec. 381, 893 N.E.2d 653 (2008).
There can be little question here that the trial court's failure to issue a section 115-10(c) instruction was error. See People v. Mitchell, 155 Ill.2d 344, 185 Ill.Dec. 528, 614 N.E.2d 1213 (1993) (reversing the defendant's conviction because, among other things, the trial court had failed to tender the jury a section 115-10(c) instruction). We must therefore determine whether defendant can establish either prong of the plain-error test so that we may overlook his procedural default and consider the error in this appeal.
Under the first prong, defendant argues that he can demonstrate even more than that the evidence was closely balanced: he asserts that the evidence actually strongly favored him. According to defendant, without the hearsay evidence, as to which the jury was improperly instructed, the State produced only his confession, without any corroboration as required to establish the corpus delicti of the crimes. However, defendant makes no argument that the hearsay statements should not have been admitted as evidence at trial; he argues only that the jury was improperly instructed on how to consider that evidence. We therefore see no reason to exclude the hearsay statements from our evaluation of the closeness of the evidence admitted at trial.
Based on all of the evidence admitted at trial, we agree with the State that it overwhelmingly established defendant's guilt. As the State notes, that evidence included defendant's extensive confession and incredible testimony attempting to impeach his confession. Defendant argues that, notwithstanding his confession, the evidence was not overwhelming because M.G.'s videotaped statements were inconsistent and ambiguous. We agree that M.G.'s statements were less clear than might have been those of an adult witness, but, viewing them on the whole, we nevertheless conclude that they leave the unmistakable impression that M.G. was relaying an accusation of sexual assault. Accordingly, we hold that defendant has failed to establish the first prong of the plain-error rule.
Under the second prong of the plain-error rule, defendant argues that, regardless of the closeness of the evidence, the jury instruction error was so fundamental *423 that it requires reversal. Defendant first asserts that our supreme court's opinion in Mitchell "suggests" that the failure to tender a section 115-10(c) instruction is a fundamental error. We do not read Mitchell as expressing any holding on this point. The supreme court in that case focused exclusively on the first prong of the plain-error test, and, after determining that the defendant had satisfied the first prong, it found plain error without reference to the second prong. See Mitchell, 155 Ill.2d at 354, 185 Ill.Dec. 528, 614 N.E.2d 1213.
Defendant acknowledges that Mitchell does not provide strong support for his argument, and he also directs us to People v. Guajardo, 262 Ill.App.3d 747, 201 Ill. Dec. 431, 636 N.E.2d 863 (1994), an appellate court case applying Mitchell. In Guajardo, the trial judge failed to tender a written jury instruction in accordance with section 115-10(c), but it read such an instruction to the jury in open court and tendered to the jury a general witness credibility instruction that mirrors the general instruction given in this case. Guajardo, 262 Ill.App.3d at 762, 201 Ill. Dec. 431, 636 N.E.2d 863. The court in Guajardo said that, "[h]ad the [general] instruction been the only one given, [the failure to tender a section 115-10(c) instruction] would have constituted plain error." Guajardo, 262 Ill.App.3d at 762, 201 Ill.Dec. 431, 636 N.E.2d 863. However, because the trial judge in Guajardo also gave an oral instruction tracking the statute, the court held that the failure to tender a written instruction was harmless. Guajardo, 262 Ill.App.3d at 762, 201 Ill. Dec. 431, 636 N.E.2d 863.
The State responds by correctly pointing out that the plain-error statement in Guajardo was dictum, and we further note that the dictum was not supported by any authority or analysis. Guajardo therefore provides only very limited guidance. For its part, the State directs us to People v. Booker, 224 Ill.App.3d 542, 166 Ill.Dec. 252, 585 N.E.2d 1274 (1992). In Booker, counsel for the State and for the defendant agreed that the trial court should not tender an instruction based on section 115-10(c), and the trial court thus did not tender one. It did, however, tender a general instruction on witness credibility, based on the existing version of the Illinois Pattern Jury Instructions. Booker, 224 Ill.App.3d at 555, 166 Ill.Dec. 252, 585 N.E.2d 1274, citing Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed.1981). That instruction mirrors the instruction given here, with the exception that the instruction given in this case added that the jury could take into account the witnesses' ages. On appeal, the defendant in Booker argued that the failure to tender the section 115-10(c) instruction constituted plain error, because, even with the general instruction, the jury was not "told to consider the victim's age and maturity and the circumstances under which the statements were made." Booker, 224 Ill.App.3d at 556, 166 Ill.Dec. 252, 585 N.E.2d 1274. The court in Booker disagreed that the failure to tender the instruction amounted to plain error:
"[T]he standard instruction given advised the jurors to consider the witness[es]' ability and opportunity to observe. This impliedly advised them to consider the victim's age. In addition, the jury was told it could consider the witness[es]' memory * * *. Although the specific instruction required by section 115-10(c) of the Code was not given, the error was harmless and not subject to the plain error rule because defendant was not denied any substantial right." Booker, 224 Ill.App.3d at 556, 166 Ill.Dec. 252, 585 N.E.2d 1274.
*424 The State tracks this decision in its brief and argues that the error in failing to tender the section 115-10(c) instruction here was severely mitigated by the trial court's tendering a general witness instruction and thus that the error cannot be considered so fundamental that it amounts to plain error. Defendant answers that the supreme court's decision in Mitchell, which was decided after Booker, effectively overrules Booker's reasoning. Neither the supreme court decision nor the underlying appellate court decision in Mitchell describes the actual jury instructions given in that case, but both mention the State's argument that the trial court "gave an instruction similar to" the instruction required under section 115-10(c) and reject the argument because the jury was not instructed to consider "the age and maturity" of the child witness or the "nature of the statement." Mitchell, 155 Ill.2d at 353, 354, 185 Ill.Dec. 528, 614 N.E.2d 1213; People v. Mitchell, 228 Ill.App.3d 917, 931, 171 Ill.Dec. 62, 593 N.E.2d 882 (1992). The supreme court decision added that the jury instructions actually tendered also failed to tell the jury to consider "the circumstances under which the statement was made." Mitchell, 155 Ill.2d at 354, 185 Ill.Dec. 528, 614 N.E.2d 1213. Although we cannot reach a definitive conclusion, we think it likely that the State in Mitchell referred to an instruction similar to the general witness instruction given in Booker.
However, we disagree that Mitchell controls the outcome here, not only because the discussion in Mitchell came after the supreme court had already determined that the defendant had established plain error under the first prong of the plain-error test (which, as discussed above, defendant has not done here), but also because the general witness instruction given here was more curative than those tendered in either Mitchell or Booker. In holding that the instructions actually tendered did not cure the plain error caused by the omission of the section 115-10(c) instruction, the supreme court in Mitchell noted that none of the given instructions "specifically address[ed]" the child's statement, "the age and maturity of the child," "the nature of the statement," or "the circumstances under which the statement was made." Mitchell, 155 Ill.2d at 354, 185 Ill.Dec. 528, 614 N.E.2d 1213. The jury in this case had more guidance, because the trial court included in the general witness instruction the charge that the jury should also consider the witnesses' ages. With the age instruction problem removed, the remaining omissions identified in Mitchell do far less to weaken the curative effect of the general instructions given here. The last two considerations listed in Mitchellthe nature of the statement, and the circumstances surrounding the statementseem to us implicit and unavoidable parts of the jury's charge to consider the evidence presented at trial.
That leaves but one of the four deficiencies identified in Mitchell: the lack of a jury instruction specifically addressing the child's hearsay statement. Defendant presses a similar concern in his brief when he argues that we cannot view the general witness instruction as mitigating the lack of a section 115-10(c) instruction, because the general instruction directed the jury only in its consideration of "the testimony of any witness," not its consideration of the boys' videotaped statements. However, we do not see this as a distinction that a reasonable juror would draw. Although the boys' statements were not technically testimony, the statements were played for the jury during the testimonial portion of the trial (and as part of the testimony of the interviewers to whom the boys made the statements), and they had the same effectallowing the jury to hear the boys' accusations in their own wordsas testimonial evidence. Defendant directs us to no authority, and we find none, for the *425 proposition that a jury instruction regarding witness testimony cannot be understood to apply also to hearsay statements adduced during a witness's testimony.[2] In his petition for rehearing, defendant contests our statement that the instruction regarding witness testimony can be understood to govern hearsay video evidence, and he emphasizes the differing legal definitions of the terms "hearsay" and "testimony." We agree with defendant that the instruction did not technically suffice as an instruction on hearsay and that therefore the trial court erred in failing to tender a hearsay instruction. However, we believe that the above instruction mitigated the error to the extent that it is not subject to the plain-error doctrine.
Based on the above discussion, Mitchell does not preclude the possibility that the general witness jury instruction tendered here mitigated the trial court's failure to tender a section 115-10(c) instruction. Instead, we agree with the State that the error was not so fundamental that we may apply the plain-error doctrine. We therefore conclude that defendant's unpreserved objection to the jury-instruction error cannot be considered under either prong of the plain-error test.
In his petition for rehearing, defendant argues that our holding renders section 115-10(c) superfluous by stating that parts of the section 115-10(c) instruction are not necessary. We disagree. We hold that the instruction described in section 115-10(c) must be given as provided in the statute and that the failure to do so is error. However, we hold that, under the facts of this case, the error was mitigated by additional instructions tendered by the trial court, such that the error is not subject to the plain-error doctrine.
Defendant's final argument is that the trial court erred in ruling that his two seven-year sentences for aggravated criminal sexual abuse should run consecutively to his life sentence for his remaining crimes. The State concedes the point and agrees that the seven-year sentences should be modified to run concurrently with his life sentence. We therefore hereby modify defendant's seven-year sentences accordingly. See People v. Palmer, 218 Ill.2d 148, 170, 300 Ill.Dec. 34, 843 N.E.2d 292 (2006).
For the foregoing reasons, we affirm the judgment of the circuit court of De Kalb County, with the modification that defendant's seven-year sentences for aggravated criminal sexual abuse run concurrently with, and not consecutively to, his life sentence.
Affirmed as modified.
BOWMAN and BURKE, JJ., concur.
NOTES
[1] Courts applying the federal plain-error test require that the error be "plain," which, in the federal parlance, means that the error must be "clear and obvious." See United States v. Olano, 507 U.S. 725, 735, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 520(1993). In People v. Herron, 215 Ill.2d 167, 294 Ill.Dec. 55, 830 N.E.2d 467 (2005), our supreme court equated the Illinois plain-error test's requirement that an error be plain with the federal "clear and obvious" requirement. See Herron, 215 Ill.2d at 184, 294 Ill.Dec. 55, 830 N.E.2d 467 (2005), citing People v. Keene, 169 Ill.2d 1, 17, 214 Ill.Dec. 194, 660 N.E.2d 901 (1995) ("short of a conclusion that an asserted error is a `plain' one, the so-called plain error doctrine offers no basis to excuse a procedural default"). However, for the quoted sentence, Keene cited a page of a law review article that discussed the idea that the plain-error doctrine excuses a forfeiturethe cited page does not address any "clear and obvious error" requirement. See P. Wangerin, "Plain Error" and "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default, 29 DePaul L.Rev. 753, 772 (1980). The supreme court has since been quite clear that it intended to adopt the federal requirement. See In re M.W., 232 Ill.2d 408, 430-32, 328 Ill.Dec. 868, 905 N.E.2d 757 (2009) (including the "clear and obvious" requirement). Pursuant to this requirement, an error will not be considered plain if the law was unclear at the time of trial but became clear on appeal because the applicable law had been clarified. In re M.W., 232 Ill.2d at 430-32, 328 Ill.Dec. 868, 905 N.E.2d 757. Even so, the requirement would seem difficult to apply, because the obviousness of a legal error may depend in large part on the ability and dedication of the person searching for it, and the clarity of the law may depend on the view of the person reading it. Further, the fact that a point of law underlying an error is not well settled does not control the question of whether the error affected the defendant's "substantial rights." Also, the "clear and obvious" test as it is formulated has the counterintuitive effect of favoring the defendant who failed to raise an "obvious" objection (even though such an omission should be less excusable) over the defendant who failed to raise an objection with a less certain outcome (even though that omission should be more excusable). In any event, this case presents no issues regarding the "clear and obvious" requirement of the plain-error test.
[2] In his brief, defendant cites the portion of Mitchell referencing the trial court's failure there to provide an instruction "specifically addressing" the child's statement, and, in his petition for rehearing, he relies heavily on that statement for the idea that the supreme court in Mitchell drew a distinction between instructions addressing testimony and instructions addressing hearsay statements of the type at issue here. See Mitchell, 155 Ill.2d at 354, 185 Ill.Dec. 528, 614 N.E.2d 1213. However, the statement defendant references immediately follows the supreme court's holding that the first prong of the plain-error test (the "closeness of the evidence" prong) was met. We read Mitchell more narrowly as referring to the lack of a section 115-10(c) instruction as error after the plain-error test had been satisfied, not to a broad proposition that a general witness instruction can never mitigate a section 115-10(c) error such that it does not become plain error. Further, as discussed above, we read Mitchell as focusing most strongly on the absence of an instruction addressing the declarant's age as constituting error.